**Audrey CRUMPLER, as Administratrix of the Estate of John Ray Crumpler, deceased, and Audrey Crumpler, Individually, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 78 Civ. 4778 (CHT).

United States District Court, S. D. New York.

Aug. 20, 1980.

Eric S. Brown, Law Offices of Thomas Hoffman, New York City, for plaintiff.

John S. Martin, Jr., U. S. Atty. for the Southern District of New York, New York City, for defendant; Janis P. Farrell, Asst. U. S. Atty., New York City, of counsel.

## OPINION

TENNEY, District Judge.

Audrey Crumpler, administratrix of the estate of her husband John Ray Crumpler, instituted this medical malpractice, wrongful death action against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.* ("FTCA"). The government has moved for summary judgment on the ground that the plaintiff's claim is barred by the *Feres* doctrine which precludes liability for injuries to servicemen that result from activities incident to military service. For the reasons given below, the motion is denied.

*Facts*

John Ray Crumpler enlisted in the United States Air Force on June 6, 1966. In December 1966, he started to experience seizures, severe headache, and other physical difficulties. About a year later, he was diagnosed as having epilepsy, a psychomotor seizure disorder, by doctors at the U. S. Naval Hospital in St. Albans, New York. Crumpler's case was reviewed by a United States Air Force Physical Evaluation Board ("PEB") in December 1967. The Board recommended that Crumpler be placed on the Temporary Disability Retirement List ("TDRL") with a disability rating of 30%. The PEB later amended its findings but the Physical Disability Appeal Board adopted the original recommendation. Crumpler was thus placed on TDRL on February 26, 1968.

Between 1968 and October 1972, Crumpler underwent a series of medical tests and examinations at various United States Air Force ("USAF") medical facilities. His condition worsened and he continued to be diagnosed and treated as epileptic. Eventually, after conducting a hearing at which Crumpler was present, the PEB recommended that he be permanently retired with a disability rating of 60%. This recommendation was followed by the Secretary of the Air Force and Crumpler was placed on the Permanent Disability Retirement List ("PDRL") on October 12, 1972.

There appears to be some dispute about Crumpler's medical treatment after he was placed on the PDRL. Mrs. Crumpler contends that her husband was examined and treated at several different USAF medical facilities from 1973 until 1976. Affidavit of Audrey Crumpler, sworn to February 1, 1980 ("Crumpler Aff."), ¶ 5. Mrs. Crumpler's affidavit lists the facilities where her husband underwent different tests and treatments at various times. While the government does not directly refute each of these assertions, it apparently adopts the view that any of the medical examinations that could be at issue in this case occurred prior to October 1972 while Crumpler was on the TDRL. Although the government concedes that appointment slips in Crumpler's medical records indicate that he had appointments at the Neurology Clinic at Womack Army Hospital in Fort Bragg, North Carolina on June 16, 1973 and March 5, 1976, it states that "[i]t is unknown from the available records whether he ever made the first appointment." Defendants' Memorandum at 3.

Crumpler died at the age of 29 on February 7, 1976. Dr. Page Hudson, Chief Medical Examiner of the Health Services Division of the North Carolina Department of Human Resources, sent Mrs. Crumpler a letter ten days later which stated that an autopsy revealed that her husband had died from a "huge brain tumor, cancer of the brain." Letter from Page Hudson, M.D. to Mrs. John Ray Crumpler, dated February 17, 1976, Exh. A to Plaintiff's Memoran-

dum. Dr. Hudson indicated that even months before Crumpler's death, nothing could have been done to save his life. His letter continued:

> The history Dr. Caldwell and I have is that your husband was discharged from the military because of "spells." I do not know how long ago this was or what sort of "spells" these were. If this was in the past two or three years it is almost a certainty that the brain tumor caused these. If this is the case then you may well be entitled to additional government benefits because of your husband dying of an illness that began while he was in the military.
>
> I am not certain of these benefits, if any, but strongly recommend that you seek legal aid, an attorney or pursue other contacts you may have with the military.

*The Feres Doctrine*

The FTCA allows damage actions against the United States for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). One of the several limitations to this right of action excludes any "claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war". *Id* § 2680(j). In *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the Supreme Court adopted an extremely restrictive interpretation of the Act that does not appear to be supported by the language of the statute but has withstood the test of time and has remained immune from congressional action. *Feres* actually involved three separate cases in which a serviceman on active duty sustained an injury as a result of the negligent conduct of other members of the military. The *Jefferson* and *Griggs* cases involved medical malpractice like the case at bar. Similarly,

*Feres* and *Griggs* were actions brought by the executrix of the serviceman whose death allegedly resulted from the negligence of military personnel. Ruling on all three cases, the Court held "that the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Id.* 340 U.S. at 146, 71 S.Ct. at 159. The Court's decision was premised on its rather sarcastically stated view that "[t]he Tort Claims Act was not an isolated and spontaneous flash of congressional generosity." Specifically, the Court relied on several distinct factors to justify this judicially-created exception to the FTCA: (1) the fact that no private liability parallel to that asserted by the service members existed at common law; (2) the unfairness that could result from variations in state laws governing servicemen's tort claims; (3) the "distinctively federal" character of the relationship between the government and military personnel and the absence of a federal law permitting damages against the military in these circumstances; and (4) the existence of the Veterans' Benefit Act which provided a system of "simple, certain, and uniform compensation" for injuries or death of armed services members. *Id.* at 141–44, 71 S.Ct. at 157–158. Finally, the Court concluded that Congress did not intend to create "a new cause of action dependent on local law for service-connected injuries or death due to negligence." *Id.* at 146, 71 S.Ct. at 159.

The *Feres* Court sought to distinguish the case of *Brooks v. United States*, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), which was decided the year earlier. *Brooks* allowed an FTCA action against the government for the death of one serviceman and injuries sustained by another when the automobile in which they were riding on a public highway was struck by an army truck. According to the *Feres* Court, the "vital distinction" in *Brooks* was that the injury "did not arise out of or in the course of military duty." 340 U.S. at 146, 71 S.Ct. at 159. Brooks was on furlough, driving on the highway and was "under compulsion of

no orders or duty and on no military mission." *Id.*

A similar result was reached in the 1954 case of *United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954). A discharged veteran brought an FTCA suit against the government for injuries sustained from negligent medical treatment. The Court held that the suit was governed by *Brooks,* not *Feres,* because the injury "was not incurred while respondent was on active duty or subject to military discipline." *Id.* at 112, 75 S.Ct. at 143. The respondent had already been discharged and "enjoyed a civilian status." *Id.* Reaffirming the distinction drawn in *Feres* "between injuries that did and injuries that did not arise out of or in the course of military duty," the Court ruled that the negligent act in *Brown* was not "incident to military service." *Id.* at 113, 75 S.Ct. at 143.

The Supreme Court recently reiterated its adherence to the *Feres* doctrine in *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977). A serviceman had brought a tort suit against a private defendant and the latter sought indemnity from the United States under the FTCA on the theory that the government was primarily responsible for the aircraft malfunction that caused the serviceman's injuries. In holding that the indemnity suit was barred under *Feres,* the Court reviewed the underpinnings of that rule:

First, the relationship between the Government and members of its Armed Forces is "distinctively federal in character" . . . ; it would make little sense to have the Government's liability to members of the Armed Services dependent on the fortuity of where the soldier happened to be stationed at the time of the injury. Second, the Veterans' Benefits Act establishes, as a substitute for tort liability, a statutory "no fault" compensation scheme which provides generous pensions to injured servicemen, without regard to any negligence attributable to the Government. A third factor was explicated in *United States v. Brown,* 348 U.S. 110, 112 [75 S.Ct. 141, 143, 99 L.Ed. 139] (1954), namely, "[t]he peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty . . . .."

*Id.* at 671–72, 97 S.Ct. at 2058 (citation omitted).

The numerous lower court decisions applying the *Feres* doctrine have reached inconsistent, and sometimes surprising results. *See, e. g., Parker v. United States,* 611 F.2d 1007 (5th Cir. 1980) (*Feres* does not bar FTCA suit by off-duty serviceman on a four-day furlough who is struck by military vehicle on a road within the military reservation while proceeding to his off-base residence); *Woodside v. United States,* 606 F.2d 134 (6th Cir. 1979), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980) (dismissing FTCA suit brought by widow of an on-leave Air Force officer who was killed while receiving flight instruction toward a commercial pilot license on the ground that he was able to gain admission to the club because he was in the Air Force, notwithstanding that the club was not integral to a military mission and owned the airplane that crashed); *Uptegrove v. United States,* 600 F.2d 1248 (9th Cir. 1979), *cert. denied,* 444 U.S. 1044, 100 S.Ct. 732, 62 L.Ed.2d 730 (1980) (*Feres* bars FTCA action brought by widow of an on-leave serviceman who was killed in an airplane crash while traveling not pursuant to military orders but as a "military space available passenger"). When a case presents an unusual or novel fact pattern, the court must consider the factors underlying the *Feres* doctrine to determine whether it applies to the particular circumstances at hand. As the cases multiply, the gloss on *Feres* grows thicker and the various interpretations of the "incident to military service" standard become more complex.

*Crumpler's Claim*

The government argues that the *Feres* doctrine bars this suit because "[s]erviceman Crumpler's examinations while he was on the TDRL were clearly conducted to determine whether he should be permanently retired or should be allowed back on active duty. The medical examinations were incident to his military service in that they were conducted to determine what his military status was to be." Defendant's Memorandum at 10.

The plaintiff, in response, contends that *Feres* does not apply to any acts of negligence that occurred after Crumpler was placed on the TDRL in 1968. After that date Crumpler was not under military supervision, led a civilian life style, and was privately employed. Quoting from the transcript of Crumpler's 1972 hearing before the PEB, the plaintiff states that "it is evident that the military personnel themselves did not consider decedent to be in the Armed Forces while on TDRL status." Plaintiff's Memorandum at 6; *see* Exh. B to Plaintiff's Memorandum, at 4, 8. Mrs. Crumpler also disputes the government's assertion that all medical examinations after 1968 were for the purpose of determining whether her husband should remain on the TDRL. She contends that Crumpler was continuously examined while he had TDRL status for the purposes of diagnosis and treatment, to which he was entitled as a veteran; these examinations were not incidental to military service. Finally, citing the rule in *United States v. Brown, supra,* that a discharged serviceman may institute an FTCA suit, Mrs. Crumpler points out that the government does *not* argue that any claim alleging negligence after Crumpler ·was placed on the PDRL (1972–1976) is foreclosed by *Feres.*

The Court concludes that genuine issues of material fact remain to be resolved in this action. *See* Fed.R.Civ.P. 56(c), (e). First, the government has not adequately refuted the plaintiff's final contention, mentioned above, that Crumpler received negligent medical treatment while on the PDRL and thus falls within *Brown* and not *Feres.* The Court agrees with the plaintiff that the extent and nature of the treatment received by Crumpler at military facilities from 1972 until his death constitute issues of fact precluding summary judgment. If the government concedes that PDRL status is equivalent to a discharge, then any claims based on treatment that occurred during that period would not be barred by *Feres.* Mrs. Crumpler contends that from 1972 until 1976, her husband was treated on several different occasions at the Chelsea Naval Base in Boston, the Naval Hospital in St. Albans, New York, the Veterans Administration Hospital in Winston-Salem, North Carolina, and the Veterans Administration Hospital at Fort Bragg, North Carolina. Crumpler Aff. ¶ 5. The government acknowledges that Crumpler's medical records indicate that he had appointments at the Womack Army Hospital in Fort Bragg in 1973 and 1976 and it presents no evidence refuting Mrs. Crumpler's other allegations. Accordingly, factual issues remain regarding the viability of malpractice claims that arose while Crumpler was classified as a permanent disability retiree.

Second, the Court is not convinced that *Feres* automatically bars all negligence claims that arose during 1968 to 1972 while Crumpler was on the TDRL. A question of fact remains regarding the purpose of all the medical examinations that Crumpler underwent during that period. This inquiry may help to determine whether the exams fall within the "incident to military service" standard established by *Feres.* Furthermore, Mrs. Crumpler's description of her husband's activities during this time, and the transcript of the PEB hearing held before he was placed on the PDRL, provide strong support for the view that a serviceman deemed to be a temporary disability retiree is not barred from bringing an FTCA suit by the *Feres* rule. Additional information regarding the precise military status of those on the TDRL may be instructive in resolving this issue, if the question must ultimately be addressed. If the plaintiff's FTCA action can be based on events that occurred after her husband was placed on the PDRL, then it would not be

necessary to determine whether a TDRL serviceman falls within the *Feres* doctrine. Rather than decide this issue prematurely, the Court will await further exploration of the facts and a determination as to whether the action can proceed on this alternate theory.

*Conclusion*

The government's motion for summary judgment is denied. Genuine factual issues remain regarding the extent and nature of Crumpler's medical examinations at United States military facilities after he was transferred to the PDRL. Additionally, the Court is not convinced that, as a matter of law, a TDRL serviceman could not bring an action under the FTCA. This latter issue need not, and will not, be resolved at this time.

So ordered.