Hattie L. COOPER, Administratrix of the Estate of Herman Cooper

v.

PERKIOMEN AIRWAYS, LTD., and United States of America.

Civ. A. No. 81–2524.

United States District Court, E.D. Pennsylvania.

Jan. 16, 1985.

Adam O. Renfroe, P. Silverman, Philadelphia, Pa., for plaintiff.

Ronald C. Scott, Gary Tilles, Asst. U.S. Atty., Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

Pending before the Court are three cases arising out of the crash of an Air Pennsylvania plane while approaching Philadelphia International Airport on July 22, 1980. The United States is a defendant in all three cases, the plaintiffs having alleged negligence on the part of air traffic controllers employed by the Federal Aviation Administration (FAA). One of the three persons killed in the crash, Herman Cooper, was a Chief Master Sergeant in the United States Air Force. In the instant case, wherein the late Sergeant Cooper's wife is plaintiff on behalf of his estate, the United States has moved for summary judgment contending that the *"Feres* doctrine" precludes an action against the United States by a member of the Armed Forces injured or killed while engaged in an activity incident to military service.

The Feres doctrine is a judicially created exception to the waiver of sovereign immunity accomplished by the Federal Tort Claims Act, 28 U.S.C. § 1346(b), 2671 *et seq.* (FTCA). It was first announced by the Supreme Court in a group of cases reported under the caption of *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). A year earlier in *Brooks v. United States*, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), the Supreme Court had declined to create a blanket exception to FTCA for members of the Armed Forces, but had commented that, "Were the accident incident to the Brooks' service, a wholly different case would be presented". *Brooks* at 52, 69 S.Ct. at 920. The *Feres* case, in which plaintiff's decedent was an Army private killed in a barracks fire, provided the Court the opportunity to consider just such a situation. In holding that Congress had not intended to waive sovereign immunity with respect to an injury or death arising out of or in the course of an activity incident to service the Court emphasized the "vital distinction" between the *Feres* and *Brooks* cases:

> The injury to Brooks did not arise out or or (sic) in the course of military duty. Brooks was on furlough driving along the highway, under compulsion of no orders or duty and on no military mission. A Government-owned and operated vehicle collided with him. Brooks' father, riding in the same car, recovered form his injuries and the Government did not further contest the judgment but contended that there could be no liability to the sons, solely because they were in the Army. This court rejected the contention, primarily because Brooks' relationship while on leave was not analogous to that of a soldier injured while performing duties under orders. *Feres*, 340 U.S., at 146, 71 S.Ct. at 159.

Our task here is to determine whether Cooper's action is more closely analogous to *Brooks* or to *Feres*. The facts relevant to that determination are not in dispute. Master Sergeant Cooper was enroute to New Jersey to pick up his privately-owned vehicle after reassignment to Gunter Air Force Base in Alabama from Hickam Air Force Base in Hawaii. Defendant's Exhibit B to the summary judgment motion reveals that Cooper was on leave and travelling in a civilian aircraft at the time of the accident that caused his death. The United States argues that he was nevertheless "in line of duty" citing cases from the Ninth Circuit in which servicemen's estates were not permitted to pursue actions against the government arising out of air crashes although the decedents were on leave at the time. *Archer v. United States*, 217 F.2d 548 (9th Cir.1954), *Uptegrove v. United States*, 600 F.2d 1248 (9th Cir.1979). What the government failed to mention in its discussion of the applicability of those

cases to the one at bar is that both Archer and Uptegrove were travelling on military aircraft and were "subject to the command of the military flight crew and could be disciplined before a military court for violating provisions of the Uniform Code of Military Justice". *Uptegrove* at 1249.

The importance of that fact was reiterated by the Supreme Court in *United States v. Brown*, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954), where the court allowed a case to proceed because it was governed by *Brooks* rather than *Feres* in that, "The injury for which suit was brought was not incurred while respondent was on active duty or subject to military discipline". *Brown* at 112, 75 S.Ct. at 143. In *Johnson v. United States*, 704 F.2d 1431 (9th Cir.1983), the court held that since the plaintiff was "not under military control" at the time of the accident he was entitled to pursue his claim against the government. That fact was enough to distinguish Johnson's case, in which he was suing the Air Force for negligence in the operation of an NCO club, from others holding that accidents occurring on base were not actionable. Likewise, in *Parker v. United States*, 611 F.2d 1007 (5th Cir.1980), the court allowed recovery for a serviceman's death in an automobile accident on the military reservation that occurred as he was exiting the base to begin a leave because he was "not directly subject to military control". Finally, in this district, Judge Ditter allowed an action to proceed because the decedent, killed by a fellow serviceman in a barracks men's room, "was not acting under compulsion of orders or duty and he was not on a military mission. His injuries were in no significant way a consequence of his use of benefits or services available to him because of his status as a serviceman." *Bryson v. United States*, 463 F.Supp. 908, 914 (E.D.Pa.1978).

▮ From the cases cited it clearly appears that the threshold question in deciding upon the application of the *Feres* doctrine is whether or not the injured party was engaged in an activity incident to military service. One of the most reliable indicia of that is to determine whether or not he was under orders or otherwise subject to military control at the time of the accident. In the case before us, Sergeant Cooper was off duty and not under military control. Moreover, there is nothing in the record to suggest that his presence on the plane was in any way a benefit or activity incident to military service except in the remote sense that "all human events depend upon what has already transpired". *Brooks*, 337 U.S., at 52, 69 S.Ct. at 920. Thus, although Cooper most probably would not have been travelling on that plane if he had not been a recently transferred Air Force serviceman who needed to retrieve his automobile, that connection is too attenuated to invoke the *Feres* doctrine.

Defendant United States relies heavily upon three factors identified as the rationale underlying the *Feres* doctrine in urging its application to this case despite the weakness of the link between the accident and Cooper's military service. Before discussing them, we note that the reasons the Court used to justify creating a new exception to the FTCA are not to be confused with the initial and essential inquiry of whether or not the injuries sustained by a member of the Armed Forces arose out of an activity incident to service.

Although first mentioned in *Brown*, the latest of the *Brooks/Feres/Brown* trilogy of cases, some courts consider the possibility of an adverse effect upon military discipline as the principal reason for disallowing suits against the United States by Military personnel. See, Annot. 31 ALR Fed. 146, 176 (1977). It is quite obvious, however, that where an accident is not directly connected to military service it cannot lead to the questioning of military orders by members of the Armed Forces nor to any sort of second guessing of command decisions by the judiciary. Consequently, this factor serves to reemphasize the importance of the initial inquiry into whether or not the accident is incident to service.

A second factor, mentioned in *Feres*, is that the existence of compensation system in the Veterans Benefits Act assures the injured party or his family of a recovery regardless of fault on the part of the government. Although it is true that the plaintiff in this case is receiving such compensation, that fact has never been considered dispositive of whether or not an action may be maintained under FTCA. Any recovery that may be had against the United States for its alleged negligence can be reduced by the amount of payments made under the Veterans Benefits Act. See, *Brooks* at 53, 54, 69 S.Ct. at 920, 921 and *Brown*, 348 U.S., at 113, 75 S.Ct. at 143.

Finally, relying on the third *Feres* factor, the United States argues that the "distinctively federal" relationship between military personnel and the government should preclude a tort recovery since under the FTCA the controlling substantive law is that of the place of the accident. Adopting the logic of the Supreme Court in *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977), the government contends that liability should not vary according to the situs of the alleged negligence. That argument is singularly unpersuasive in a situation such as this, where another federal agency may be liable to non-military persons for injuries arising out of the same accident. As Justice Marshall pointed out in his dissent in *Stencel*, an agency such as the FAA, also has personnel and equipment in all fifty states, yet Congress has made its liability dependent upon the location of the accident. Again, where, as here, the incident involving service personnel has no real connection to military status there is no more reason to invoke the "federal" relationship with respect to that plaintiff than there is to invoke it with respect to those plaintiffs in the companion cases.

For all of the foregoing reasons the government's motion for summary judgment will be denied.