# STENCEL AERO ENGINEERING CORP. *v.* UNITED STATES

No. 76–321.  Argued March 22, 1977—Decided June 9, 1977

*Thomas J. Whalen* argued the cause and filed briefs for petitioner.

*Thomas S. Martin* argued the cause for the United States. With him on the brief were *Acting Solicitor General Friedman* and *Acting Assistant Attorney General Jaffe.*

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted certiorari in this case to decide whether the United States is liable under the Federal Tort Claims Act, 28 U. S. C. § 2674, to indemnify a third party for damages paid by it to a member of the Armed Forces injured in the course of military service.

(1)

On June 9, 1973, Captain John Donham was permanently injured when the egress life-support system of his F–100 fighter aircraft malfunctioned during a midair emergency.[1] Petitioner, Stencel Aero Engineering Corp., manufactured the ejection system pursuant to the specifications of, and by use of certain components provided by, the United States.[2] Pursu-

---

[1] Captain Donham was at the time assigned for training to the 131st Tactical Fighter Group, Missouri Air National Guard.

[2] There is no contractual relationship between the United States and

ant to the Veterans' Benefits Act, 38 U. S. C. § 321 *et seq.*, made applicable to National Guardsmen by 32 U. S. C. § 318, Captain Donham was awarded a lifetime pension of approximately $1,500 per month. He nonetheless brought suit for the injury in the Eastern District of Missouri claiming damages of $2,500,000. Named as defendants, *inter alia,* were the United States and Stencel. Donham alleged that the emergency eject system malfunctioned as a result of "the negligence and carelessness of the defendants individually and jointly."

Stencel then cross-claimed against the United States for indemnity, charging that any malfunction in the egress life-support system used by Donham was due to faulty specifications, requirements, and components provided by the United States or other persons under contract with the United States. The cross-claim further charged that the malfunctioning system had been in the exclusive custody and control of the United States since the time of its manufacture. Stencel therefore claimed that, insofar as it was negligent at all, its negligence was passive, while the negligence of the United States was active. Accordingly it prayed for indemnity as to any sums it would be required to pay to Captain Donham.[3]

The United States moved for summary judgment against Donham, contending that he could not recover under the Tort Claims Act against the Government for injuries sustained incident to military service. *Feres* v. *United States,* 340 U. S.

---

Stencel. Stencel contracted with North American Rockwell, the prime Government contractor, to provide the F–100's pilot eject system.

[3] Stencel's indemnity claim is based upon the law of Missouri. See, *e. g., Feinstein* v. *Edward Livington & Sons, Inc.,* 457 S. W. 2d 789, 792–793 (Mo. 1970); *Kansas City Southern R. Co.* v. *Payway Feed Mills, Inc.,* 338 S. W. 2d 1 (Mo. 1960). The FTCA, of course, insofar as it is applicable, fixes the liability of the United States with reference to "the law of the place where the [wrongful] act or omission occurred." 28 U. S. C. § 1346 (b).

135 (1950). The United States further moved for dismissal of Stencel's cross-claim, asserting that *Feres* also bars an indemnity action by a third party for monies paid to military personnel who could not recover directly from the United States.

The District Court granted the Government's motions, holding that *Feres* protected the United States both from the claim of the serviceman and that of the third party.[4] Both claims were therefore dismissed for lack of subject-matter jurisdiction. Stencel appealed this ruling to the Court of Appeals for the Eighth Circuit[5] and that court affirmed. 536 F. 2d 765. We granted certiorari.[6] 429 U. S. 958.

## (2)

In *Feres* v. *United States, supra,* the Court held that an on-duty serviceman who is injured due to the negligence of Government officials may not recover against the United States under the Federal Tort Claims Act. During the same Term, in a case involving injuries to private parties, the Court also held that the Act permits impleading the Government as a third-party defendant, under a theory of indemnity or contribution, if the original defendant claims that the United

---

[4] Still pending in the District Court is Donham's action against Stencel and against Mills Manufacturing Corp., another alleged tortfeasor.

[5] The District Court had properly certified its judgment as final pursuant to Fed. Rule Civ. Proc. 54 (b), thereby making immediate appeal by Stencel appropriate.

[6] The Circuits have been far from uniform in their treatment of this issue. The view taken by the Eighth Circuit in this case was first adopted by the Ninth Circuit in *United Air Lines, Inc.* v. *Wiener,* 335 F. 2d 379, 404, cert. dismissed, 379 U. S. 951 (1964), and has been recently reaffirmed in *Adams* v. *General Dynamics Corp.,* 535 F. 2d 489, 491 (1976), cert. pending, No. 76–220. Positions which appear inconsistent with this view have been adopted by the Tenth Circuit in *Barr* v. *Brezina Constr. Co.,* 464 F. 2d 1141, 1143–1144 (1972), cert. denied, 409 U. S. 1125 (1973), and by the Fifth Circuit in *Certain Underwriters at Lloyd's* v. *United States,* 511 F. 2d 159, 163 (1975).

States was wholly or partially responsible for the plaintiff's injury. *United States* v. *Yellow Cab Co.,* 340 U. S. 543 (1951). In this case we must resolve the tension between *Feres* and *Yellow Cab* when a member of the Armed Services brings a tort action against a private defendant and the latter seeks indemnity from the United States under the Tort Claims Act, claiming that Government officials were primarily responsible for the injuries.

Petitioner argues that "[t]he Federal Tort Claims Act waives the Government's immunity from suit in sweeping language." *United States* v. *Yellow Cab Co., supra,* at 547. Petitioner therefore contends that, unless its claim falls within one of the express exceptions to the Act, the Court should give effect to the congressional policy underlying the Act, which is to hold the United States liable under state-law principles to the same extent as a similarly situated private individual. However, the principles of *Yellow Cab* here come into conflict with the equally well established doctrine of *Feres* v. *United States.* It is necessary, therefore, to examine the rationale of *Feres* to determine to what extent, if any, allowance of petitioner's claim would circumvent the purposes of the Act as there construed by the Court.

*Feres* was an action by the executrix of a serviceman who had been killed when the barracks in which he was sleeping caught fire. The plaintiff claimed that the United States had been negligent in quartering the decedent in barracks it knew to be unsafe due to a defective heating plant.[7] While recognizing the broad congressional purpose in passing the Act, the Court noted that the relationship between a sovereign and the members of its Armed Forces is unlike any relationship between private individuals. 340 U. S., at 141–142. There

---

[7] The Court considered two additional cases involving alleged negligence of army officials. *Jefferson* v. *United States,* O. T. 1950, No. 29, and *United States* v. *Griggs,* O. T. 1950, No. 31. It is unnecessary, for present purposes, to detail the fact situations involved in these two cases.

is thus at least a surface anomaly in applying the mandate of the Act that "[t]he United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances . . . ." 28 U. S. C. § 2674. Noting that the effect of the Act was "to waive immunity from recognized causes of action and . . . not to visit the Government with novel and unprecedented liabilities," 340 U. S., at 142, the Court concluded:

> "[T]he Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service. Without exception, the relationship of military personnel to the Government has been governed exclusively by federal law. We do not think that Congress, in drafting this Act, created a new cause of action dependent on local law for service-connected injuries or death due to negligence. We cannot impute to Congress such a radical departure from established law in the absence of express congressional command." *Id.,* at 146.

In reaching this conclusion, the Court considered two factors: First, the relationship between the Government and members of its Armed Forces is " 'distinctively federal in character,' " *id.,* at 143, citing *United States* v. *Standard Oil Co.,* 332 U. S. 301 (1947); it would make little sense to have the Government's liability to members of the Armed Services dependent on the fortuity of where the soldier happened to be stationed at the time of the injury. Second, the Veterans' Benefits Act establishes, as a substitute for tort liability, a statutory "no fault" compensation scheme which provides generous pensions to injured servicemen, without regard to any negligence attributable to the Government. A third factor was explicated in *United States* v. *Brown,* 348 U. S. 110, 112 (1954), namely, "[t]he peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain

if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty . . . ." We must therefore consider the impact of these factors where, as here, the suit against the Government is not brought by the serviceman himself, but by a third party seeking indemnity for any damages it may be required to pay the serviceman.

Clearly, the first factor considered in *Feres* operates with equal force in this case. The relationship between the Government and its suppliers of ordnance is certainly no less "distinctively federal in character" than the relationship between the Government and its soldiers. The Armed Services perform a unique, nationwide function in protecting the security of the United States. To that end military authorities frequently move large numbers of men, and large quantities of equipment, from one end of the continent to the other, and beyond. Significant risk of accidents and injuries attend such a vast undertaking. If, as the Court held in *Feres,* it makes no sense to permit the fortuity of the situs of the alleged negligence to affect the liability of the Government to a serviceman who sustains service-connected injuries, 340 U. S., at 143, it makes equally little sense to permit that situs to affect the Government's liability to a Government contractor for the identical injury.

The second factor considered by *Feres* is somewhat more difficult to apply. Petitioner argues that the existence of a generous military compensation scheme (from which Captain Donham has benefited and will continue to benefit, *supra,* at 667–668) is of little comfort to it. It is contended that, although it may be fair to prohibit direct recovery by servicemen under the Act, since they are assured of compensation regardless of fault under the Veterans' Benefits Act, petitioner as a third-party claimant should not be barred from indemnity for damages which it may be required to pay to the serviceman, and as to which it has no alternative federal remedy.

A compensation scheme such as the Veterans' Benefits Act serves a dual purpose: it not only provides a swift, efficient remedy for the injured serviceman, but it also clothes the Government in the "protective mantle of the Act's limitation-of-liability provisions." See *Cooper Stevedoring Co.* v. *Kopke, Inc.,* 417 U. S. 106, 115 (1974). Given the broad exposure of the Government, and the great variability in the potentially applicable tort law, see *Feres,* 340 U. S., at 142–143, the military compensation scheme provides an upper limit of liability for the Government as to service-connected injuries. To permit petitioner's claim would circumvent this limitation, thereby frustrating one of the essential features of the Veterans' Benefits Act. As we stated in a somewhat different context concerning the Tort Claims Act: "To permit [petitioner] to proceed . . . here would be to judicially admit at the back door that which has been legislatively turned away at the front door. We do not believe that the [Federal Tort Claims] Act permits such a result." *Laird* v. *Nelms,* 406 U. S. 797, 802 (1972).

Turning to the third factor, it seems quite clear that where the case concerns an injury sustained by a soldier while on duty, the effect of the action upon military discipline is identical whether the suit is brought by the soldier directly or by a third party. The litigation would take virtually the identical form in either case, and at issue would be the degree of fault, if any, on the part of the Government's agents and the effect upon the serviceman's safety. The trial would, in either case, involve second-guessing military orders, and would often require members of the Armed Services to testify in court as to each other's decisions and actions. This factor, too, weighs against permitting any recovery by petitioner against the United States.

We conclude, therefore, that the third-party indemnity action in this case is unavailable for essentially the same reasons that the direct action by Donham is barred by *Feres.*

The factors considered by the *Feres* court are largely applicable in this type of case as well; hence, the right of a third party to recover in an indemnity action against the United States recognized in *Yellow Cab,* must be held limited by the rationale of *Feres* where the injured party is a serviceman. Since the relationship between the United States and petitioner is based on a commercial contract, there is no basis for a claim of unfairness in this result.[8]

Accordingly, the judgment of the Court of Appeals is

*Affirmed.*

MR. JUSTICE MARSHALL, with whom MR. JUSTICE BRENNAN joins, dissenting.

The opinion of the Court appears to be premised on the theory that in any case involving a member of the military on active duty, *Feres* v. *United States,* 340 U. S. 135 (1950), displaces the plain language of the Tort Claims Act. I cannot agree that that narrow, judicially created exception to the waiver of sovereign immunity contained in the Act should be extended to any category of litigation other than suits against the Government by active-duty servicemen based on injuries incurred while on duty.

Even if *Feres* is not to be strictly limited, I do not agree that its extension to cover this case is justified. The Court's explanation simply does not differentiate this suit by a corporation against the Government from similar suits that the Tort Claims Act does allow. See, *e. g., United States* v. *Yellow Cab Co.,* 340 U. S. 543 (1951).

The first factor relied upon by the Court is the "distinctively federal" relationship between the Government and "its sup-

---

[8] Since the first Circuit case to hold such actions barred by *Feres* was decided in 1964, see n. 6, *supra,* petitioner no doubt had sufficient notice so as to take this risk into account in negotiating its contract for the emergency eject system at issue here.

pliers of ordnance." *Ante,* at 672. It is true, of course, that the military performs "a unique, nationwide function," *ibid.,* but so do the Bureau of the Census, the Immigration and Naturalization Service, and many other agencies of the Federal Government. These agencies, like the military, may have personnel and equipment in all parts of the country. Nevertheless, Congress has made private rights against the Government depend on "the law of the place 'where the act or omission occurred," 28 U. S. C. § 1346 (b), and presumably the Court agrees that this provision governs the rights of suppliers to nonmilitary agencies. Nothing in the Court's opinion explains why it concludes that the relationship between the Government and those suppliers differs from its relationship to purveyors of military equipment.

The Court also concludes that compensation payments to an injured serviceman under the Veterans' Benefits Act, 38 U. S. C. § 321 *et seq.,* place an absolute upper limit on the Government's liability for service-connected injuries. Yet, nothing in that Act suggests that it is designed to place on third parties, such as petitioner, the burden of fully compensating injuries to servicemen when the Government is at fault. Indeed, the Veterans' Benefits Act does not even contain an explicit declaration that it is the exclusive remedy against the Government for a serviceman's injury. The comparable compensation program for civilian employees of the Government does contain such a limitation of liability. 5 U. S. C. § 8116 (c).* Yet we have held that the broad language of the exclusivity provision in the civilian compensation

---

*"The liability of the United States or an instrumentality thereof under this subchapter or any extension thereof with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States or the instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the injury or death in a direct judicial proceeding,

scheme does not affect "the rights of unrelated third parties," *Weyerhaeuser S. S. Co.* v. *United States,* 372 U. S. 597, 601 (1963), and the lower courts have allowed indemnity suits identical to petitioner's to proceed despite that provision. See, *e. g., Travelers Ins. Co.* v. *United States,* 493 F. 2d 881 (CA3 1974). The Court fails to explain why the absence of an exclusivity provision in the Veterans' Benefits Act forecloses suits by third parties in cases involving injuries to military personnel when the existence of such a clause does not bar similar actions when the injured employee works for one of the Government's civilian agencies.

Finally, the Court claims to find in this action a threat to military discipline. It is clear that the basis of *Feres* was the Court's concern with the disruption of "[t]he peculiar and special relationship of the soldier to his superiors" that might result if the soldier were allowed to hale his superiors into court. See *United States* v. *Brown,* 348 U. S. 110, 112 (1954). That problem does not arise when a nonmilitary third party brings suit.

The majority's argument that whether petitioner or the injured serviceman sues is of no import because the trial would take the same form in either case proves far too much. Had the same malfunction in the pilot eject system that caused the serviceman's injuries here also caused that system to plunge into a civilian's house, the injured civilian would unquestionably have a cause of action under the Tort Claims Act against the Government. He might also sue petitioner, which might, as it has done here, cross-claim against the Government. In that hypothetical case, as well as in the case before us, there would be the same chance that the trial would "involve second-guessing military orders, and would . . . require members of the Armed Services to testify in court as to

in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute. . . ."

each other's decisions and actions." *Ante,* at 673. Yet there would be no basis, in *Feres* or in the Tort Claims Act, for concluding that the suit is barred because of the nature of the evidence to be produced at trial. There is no basis for reaching that conclusion here.

I respectfully dissent.