For the reasons adduced herein, the Order of Adjudication is

AFFIRMED.

**Alice P. BROUDY, Plaintiff-Appellant,**

v.

**UNITED STATES of America,
Defendant-Appellee.**

No. 79–3829.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 7, 1981.

Decided Nov. 9, 1981.

As Amended Dec. 21, 1981.

**126**

Ronald G. Bakal, Beverly Hills, Cal., for plaintiff-appellant.

John C. Hoyle, Washington, D. C., argued, for defendant-appellee; Robert S. Greenspan, Washington, D. C., on brief.

Before SKOPIL, NELSON and NORRIS, Circuit Judges.

NELSON, Circuit Judge:

The Appellant, Alice P. Broudy, appeals from an order of the district court granting the motion of the United States to dismiss, for failure to state a claim upon which relief can be granted (Fed.R.Civ.P. 12(b)(6)), claims brought against it under the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346, 2671–2680 (1976 & Supp.1979). The district court concluded that an exception to the FTCA for claims incident to military service barred Broudy's claims and dismissed her claims for failure to state a claim for which relief can be granted. We affirm in part, reverse in part, and remand.

## FACTS

Appellant's husband, Major Charles A. Broudy [Major Broudy], served as an officer in the United States Marine Corps from 1944 to 1960. During the summer of 1957, Major Broudy was ordered by his commanding officers to participate in military exercises in the immediate vicinity of at least two atmospheric nuclear tests conducted in Nevada. The Appellant alleges that Major Broudy was neither told that the maneuvers involved any potential health danger, nor given a chance to decline participation.[1] Further, the Appellant alleges that prior to Major Broudy's exposure, the Government knew that nuclear radiation exposure can cause cancer and other maladies that manifest themselves years after the actual exposure. Indeed, Broudy alleges at one point that the purpose of these maneuvers was to see how well combat troops could withstand atomic blasts and their subsequent radioactive fallout.

Major Broudy was discharged in 1960, and for several years afterwards was examined and treated for various health problems at Marine medical facilities, but was not informed of or warned about the dangers associated with his exposure. In 1976, Major Broudy was diagnosed as having a form of cancer that has been related to low-level radiation exposure. He died from that disease in October of 1977.

## PROCEEDINGS BELOW

The Appellant and her children filed an administrative claim for wrongful death. After the claim was denied, they brought this FTCA action in the federal district court. The district court relied on *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), and its progeny, and granted the Government's motion to dismiss for failure to state a claim upon which relief can be granted.[2] On appeal Broudy

---

1. For purposes of this appeal, we treat all of the Appellant's allegations as true. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90, 96 (1974); *Gardner v. Toilet Goods Ass'n, Inc.*, 387 U.S. 167, 172, 87 S.Ct. 1526, 1529, 18 L.Ed.2d 704, 708 (1967).

2. Other claims presented at the district court level included causes of action for genetic damage to Major Broudy and to his children born after the exposure, and claims for fraud, breach of contract, and strict liability, all arising out of Major Broudy's exposure to the radiation. The Government and several individuals involved in

asserts that, notwithstanding the *Feres* doctrine, she has stated valid claims and that the district court erred in dismissing claims that the Government was negligent in exposing Major Broudy to the radiation and negligent in failing to warn, monitor and treat him after he left the service.

## DISCUSSION

■ Traditional sovereign immunity has been waived for tort claims against the United States by the Federal Tort Claims Act, which exposes the Government to liability arising from personal injury or property damage caused by the negligence of any Government employee "acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b) (1976). While the FTCA "waives the Government's immunity from suit in sweeping language," *United States v. Yellow Cab Co.,* 340 U.S. 543, 547, 71 S.Ct. 399, 402, 95 L.Ed. 523, 528 (1951), a number of statutory and judicial exceptions limit the waiver, and if a claim falls within any such exception the court is without jurisdiction to hear the case. *United States v. Orleans,* 425 U.S. 807, 814, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390, 398 (1976); *Dalehite v. United States,* 346 U.S. 15, 30–31, 73 S.Ct. 956, 965–66, 97 L.Ed. 1427, 1438 (1953).

In *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the Supreme Court established an exception to the FTCA's waiver of immunity for injuries to military personnel. This court discussed the *Feres* doctrine in detail in *Monaco v. United States,* 661 F.2d 129 (9th Cir. 1981). That discussion can be summarized by noting that the *Feres* doctrine has been applied consistently to avoid examining acts of military personnel that were allegedly negligent with respect to other members of the armed services. *See Feres; Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977); *Hunt v. United States,* 636 F.2d 580, 599 (D.C.Cir.1980). Recovery will only be allowed for a claimant whose injury was not the result of negligence directed toward a person on active duty. *United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954).

### A. *The Negligent Exposure Claim*

■ The Appellant seeks recovery for the wrongful death of her husband because the Government was negligent in exposing him to radiation while he was in the service.[3] In an attempt to escape the clear applicability of the *Feres* doctrine, Appellant makes a compelling argument that *Feres* was wrongly decided.[4] Despite recent questioning of the *Feres* doctrine, *see, e. g., Hunt v. United States,* 636 F.2d at, 589; *Veillette v. United States,* 615 F.2d 505, 506 (9th Cir. 1980) (applying *Feres* "reluctantly"), the doctrine remains well established, *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977), and Appellant's claim

---

the Government were named as defendants. All of these claims were dismissed, some with prejudice, some without.

3. The Appellant also contends that the United States should be held liable for the damages arising out of the exposure of Major Broudy on the theory that the Government thereby violated his constitutional rights. Although this circuit has recently held that at least some constitutional claims escape the *Feres* doctrine, *see Wallace v. Chappell,* 661 F.2d 729 (9th Cir. 1981), the Appellant did not make this claim at the district court level, and thus it is not properly before us now.

4. The Appellant also attempts to distinguish the alleged negligence in this case from the "common negligence" addressed by the *Feres* Court, by describing the Government's activities as "unconsented-to-experimentations" on Major Broudy. This effort is unavailing, however. The *Feres* doctrine does not distinguish between claims based on the alleged level of culpability of the tortfeasor; whether a negligent, a reckless or even an intentional tort is alleged. *Stanley v. CIA,* 639 F.2d 1146, 1152 (5th Cir. 1981); *Citizens National Bank of Waukegon v. United States,* 594 F.2d 1154, 1157 (7th Cir. 1979); *Everett,* 492 F.Supp. at 320–21; *Schnurman v. United States,* 490 F.Supp. 429, 436–37 (E.D.Va. 1980).

must be dismissed for lack of subject matter jurisdiction.[5]

B. *The Negligent Failure to Warn, Monitor and Treat Claim*

■ The Appellant also alleges that the Government should be liable for the injuries to Major Broudy because it failed to fulfill an alleged duty to warn Major Broudy about radiation's potential effects both before and after exposing him to it and to monitor and treat Major Broudy for the resulting effects. By alleging that the Government had a duty to Major Broudy after he left the service, the Appellant hopes to fall under the exception to *Feres* established in *Brown v. United States*, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954), for negligent acts occurring after military personnel leave the service. *See Monaco v. United States*, 661 F.2d 129, 132, 133 (9th Cir. 1981).

Several courts have examined claims of Government liability for failure to warn, monitor or treat an injury that occurred in-service. Following *Brown*, recovery has been allowed only when the claimant alleged a "separate" or "independent" negligent act occurring "entirely after discharge." *Everett v. United States*, 492 F.Supp. 318, 325–26 (S.D.Ohio 1980) (failure to warn an independent negligent act); *Thornwell v. United States*, 471 F.Supp. 344

(D.D.C.1979) (finding independent tort and granting recovery where Government deliberately refused to give claimant information on drug experiments performed on him in-service); *Schwartz v. United States*, 230 F.Supp. 536 (E.D.Pa.1964) (allowing recovery for failure to warn, where dangerous effects of drug administered during service not discovered till post-service). Recovery has been denied when the claimant merely alleges an in-service tort continuing after discharge. *Stanley v. CIA*, 639 F.2d 1146, 1155 (5th Cir. 1981) (alleged failure to monitor effects of chemical warfare an in-service tort, the effects of which simply remained uncorrected following discharge); *Henning v. United States*, 446 F.2d 774 (3d Cir. 1971), *cert. denied*, 404 U.S. 1016, 92 S.Ct. 676, 30 L.Ed.2d 664 (1972) (recovery denied for failure to inform claimant of in-service mis-diagnosis of tuberculosis); *In re "Agent Orange" Product Liability Litigation*, 506 F.Supp. 762, 778–79 (E.D.N.Y. 1980) (recovery denied where Government failed to warn military personnel about effects of chemical agent because there was no separate and distinct act of post-discharge negligence).[6]

We agree that if the Appellant can allege and prove an independent, post-service negligent act on the part of the Government, her claim would be cognizable under the FTCA. The Government's failure to warn Major Broudy of and monitor any possible

5. The district court dismissed the claims relevant to this appeal for failure to state a claim upon which relief can be granted. The *Feres* doctrine, however, is an exception to the waiver of sovereign immunity contained in the FTCA. *Orleans*, 425 U.S. at 814, 96 S.Ct. at 1976, 48 L.Ed.2d at 398; *Dalehite*, 346 U.S. at 31 n.25, 73 S.Ct. at 965 n.25, 97 L.Ed. at 1438 n.25; *Morris v. United States*, 521 F.2d 872, 874 (9th Cir. 1975). Thus, any claim barred by that doctrine should be dismissed for lack of subject matter jurisdiction because the United States has not consented to be sued for the negligence alleged in the claim. *Stanley v. CIA*, 639 F.2d 1146, 1159 (5th Cir. 1981). We, therefore, dismiss this claim for lack of subject matter jurisdiction, in accordance with the general rule that "a Court of Appeals may affirm on any ground squarely presented on the record, even though the trial court may have based its deci-

sion on a different ground." *M.O.S. Corp. v. John I. Haas Co.*, 375 F.2d 614, 617 (9th Cir. 1967), *quoted in Bramer v. United States*, 595 F.2d 1141, 1146 n.12 (9th Cir. 1979).

6. This analysis is consistent with *Feres*, for were it not the case, a party could completely abrogate the *Feres* doctrine by alleging a post-service duty to warn, monitor or treat whenever the consequences of an allegedly negligent act continued after or manifested themselves after the injured party left the service. *Schnurman v. United States*, 490 F.Supp. 429, 437 (E.D.Va.1980), *quoted in Stanley*, 639 F.2d at 1155. Whether or not we agree with the *Feres* doctrine, such artful pleading should not be a way to avoid it. *Agent Orange*, 506 F.Supp. at 779.

injuries arising from his exposure to radiation might constitute such an act if the Government learned of the danger after Major Broudy left the service. At this point the Appellant's allegations concerning the Government's knowledge of the danger to Major Broudy are somewhat confused, and do not indicate any post-service negligent act.[7] However, we realize that this confusion may result from an inability to gain necessary information from the Government. We vacate the district court's order of dismissal with prejudice, and remand to the district court for such proceedings as may be necessary in light of this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

---

**7.** At one point in her complaint the Appellant alleges that the Government learned of the dangers "subsequent to 1955 and prior to 1972"—a span that covers the time period prior to Major Broudy's 1957 exposure and after Major Broudy's discharge in 1960. At other points, however, she alleges specifically that the Government knew of the harmful effects of radiation prior to Major Broudy's exposure.