**Sueanne C. LEWIS, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 79–3276.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 2, 1981.

Decided Dec. 14, 1981.

**890**

Richard L. Chesney, Wells & Chesney, Oakland, Cal., for plaintiff-appellant.

Dzintra I. Janavs, Los Angeles, Cal., for defendant-appellee.

Before HUG, SCHROEDER and NELSON, Circuit Judges.

HUG, Circuit Judge:

■ This action was brought under the Federal Tort Claims Act,[1] to secure damages for the wrongful death of a Marine Corps pilot. It presents the question whether the *Feres* doctrine bars claims against the government for injuries sustained by military personnel during an activity incident to service when those injuries are caused by the intentional acts of government employees. We hold that the policies supporting the *Feres* doctrine require that it also bar intentional tort claims asserted against the government by military personnel.

### I

The widow of Lt. Colonel Julius Mack Lewis, Jr. brought this action after he died in the crash of a Marine Corps plane in El Toro, California on September 26, 1975. She alleged that the crash was caused by the "negligence or wrongful acts or omissions" of government employees in maintaining, operating, and controlling the aircraft. In her first amended complaint, these wrongful acts were characterized as sabotage. Lewis also alleged that her administrative claim for damages totaling $10,000,000.00 had been denied by the Government.

1. 28 U.S.C. §§ 1346(b), 2671–2680 (1976 & Supp.1978).

The United States moved for dismissal, arguing that because Lt. Colonel Lewis died in the course of an activity incident to military service, the claim was barred by the doctrine developed by the Supreme Court in *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). In opposing the government's motion, Lewis contended that the rationales supporting the application of *Feres* to negligence cases did not require its extension to intentional torts. She relied upon an analogy to the California workers' compensation laws. Although that state's benefit scheme bars tort recovery against employers for work-related injuries, some California courts have recognized intentional tort claims asserted against employers. Lewis urged the district court to take the same view of the Federal Tort Claims Act as limited by the *Feres* doctrine. The court dismissed the action and Lewis appeals.

### II

■ The Federal Tort Claims Act ("FTCA") constitutes the government's consent to suits arising from the wrongful conduct of federal employees. The general liability created by the FTCA is limited by the doctrine announced in *Feres*. In that case the Supreme Court held that no governmental liability exists under the FTCA "for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Id.* at 146, 71 S.Ct. at 159. In a more recent application of the *Feres* doctrine, the Court concluded that a limitation of liability in the military context is necessary for three reasons: (1) the "distinctively federal" nature of the relationship between the government and members of the military; (2) the provision of alternate remedies to suit; and (3) the effect of maintenance of suits on military discipline. *Stencel Aero Engineering Corporation v. United States*, 431 U.S. 666, 671–73, 97 S.Ct. 2054, 2057–59, 52 L.Ed.2d 665 (1977).

■ *Feres* itself concerned a claim based on negligence. However, the factors which required creation of the doctrine support with equal force its extension to claims of intentional wrongdoing. At the time the doctrine was enunciated, the *Feres* court stated that if the doctrine misconstrued Congress's intent in enacting the FTCA, the Act could be amended to consent expressly to liability for wrongful acts of military employees. *Feres*, 340 U.S. at 138, 71 S.Ct. at 155. We join the Seventh Circuit in viewing Congress's silence as an affirmation of the doctrine and of the policies that support it. *See Citizens National Bank of Waukegan v. United States*, 594 F.2d 1154, 1157–58 (7th Cir. 1979). We therefore conclude we must apply the same policy factors to the instant case.[2]

### III

The first consideration, the distinctly federal nature of the relationship between the government and members of the military, looks to the importance of having a uniform body of law governing claims asserted against the military. Under the FTCA, the law applied is that of the place of the wrongful act or omission. 28 U.S.C. § 1346(b) (1976). The Court in *Feres* reasoned that a plaintiff's ability to assert a claim should not be dependent upon the state in which the military has stationed him and whether that state's substantive law recognizes his claim. It concluded that liability could not be based upon geographical fortuity, but must be controlled by federal standards. *Feres*, 340 U.S. at 143–44, 71 S.Ct. at 157–58. *See Citizens National Bank*, 594 F.2d at 1157. Unquestionably this concern applies equally to negligence and intentional tort claims.

The second factor is also clearly applicable to individuals who sustain death or physical injury caused by an intentional tort. Alternate statutory remedies compensate members of the military for service-related injuries. Under 10 U.S.C. §§ 1475–1488 (1976) death benefits are made available to survivors of persons who die during active duty. Personal injuries suffered during active service are compensable under 38 U.S.C. §§ 331–337 (1976). These statutes provide "no-fault" compensation as a substitute for a tort action under the FTCA.

The final factor we must consider is the effect of litigation upon military discipline. In *Henninger v. United States*, 473 F.2d 814, 815–16 (9th Cir.), *cert. denied*, 414 U.S. 819, 94 S.Ct. 43, 38 L.Ed.2d 51 (1973), we declined to make fine distinctions between different types of negligence claims to determine their effect on discipline. Adoption of such a rule would involve the trial court in "second-guessing military orders, and would often require members of the Armed Services to testify in court as to each other's decisions and actions." *Stencel*, 431 U.S. at 673, 97 S.Ct. at 2059. This factor is thus focused upon the appropriate role of the court in reviewing military orders. Interjection of the court system into military relationships in the event of an intentional tort claim would be no less destructive of discipline.

The language of *Feres* itself does not support an effort to distinguish negligence from intentional torts. The Court concluded that governmental immunity existed as to claims "for *injuries* to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. at 146, 71 S.Ct. at 159 (emphasis added.) No limitation was imposed as to the types of injuries involved.[3] *See Thornwell v. United States*, 471 F.Supp. 344, 348 (D.D.C.1979). This court, in applying the *Feres* doctrine to negligence claims, has held that the critical determination is the status of the plaintiff, rather than the status or actions of the

---

**2.** *See Monaco v. United States*, 661 F.2d 129 (9th Cir. 1981) criticizing the rationale for the application of these policy factors.

**3.** We do not view the reference in *Feres* to *Dinsman v. Wilkes*, 53 U.S. (12 How.) 390, 13 L.Ed. 1036 (1851) as such a limitation. *See* 340 U.S. at 141 n.10, 71 S.Ct. at 157. *Dinsman* concerned an intentional tort claim asserted against an individual officer. *Feres*, like the instant case, concerned claims against the Government under the FTCA. We are not here concerned with claims against individuals.

tortfeasor. *Uptegrove v. United States,* 600 F.2d 1248, 1249–50 (9th Cir. 1979), *cert. denied,* 444 U.S. 1044, 100 S.Ct. 732, 62 L.Ed.2d 730 (1980); *Calhoun v. United States,* 475 F.Supp. 1 (S.D.Cal.1977), *aff'd. per curiam,* 604 F.2d 647 (9th Cir. 1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1029, 62 L.Ed.2d 761 (1980); *see also Rotko v. Abrams,* 338 F.Supp. 46, 47 (D.Conn.1971), *aff'd. per curiam,* 455 F.2d 992 (2d Cir. 1972). The rule we adopt here is consistent with that principle.

The Government argues that Lewis stated a claim under one of the intentional tort theories excluded by the FTCA, 28 U.S.C. § 2680(h)· (1976). Because we affirm dismissal under *Feres,* we need not reach that issue. For the same reason, we need not address whether the alleged acts of sabotage fell within the scope of employment of the Marine Corps employees. *See* 28 U.S.C. § 1346(b) (1976).

The judgment of the district court dismissing the action is AFFIRMED.