Jeff Allen FOUNTAIN and Benita B. Fountain, Husband and Wife, Plaintiffs,

v.

UNITED STATES of America, Harold Brown, Clifford L. Alexander, W. Graham Claytor, Charles E. Wilson, Max Clelland and Certain Additional Past and Present Officers and Officials of the United States Department of Defense, the Department of the Army, the Department of the Navy, the Atomic Energy Commission, the United States Army, the Veterans Administration, and the United States Navy, Whose Names will be Inserted When Ascertained, each Individually and in His Official Capacity, Defendants.

No. 80–5092.

United States District Court,
W. D. Arkansas,
Fayetteville Division.

Dec. 17, 1981.

Charles E. Davis, Davis, Bracey & Heuer, Springdale, Ark., for plaintiffs.

Larry R. McCord, U.S. Atty., Fort Smith, Ark., and Bruce E. Titus, Asst. Director, U.S. Dept. of Justice, Torts Branch, Civ. Div., Washington, D.C., for defendants.

## MEMORANDUM OPINION

WATERS, Chief Judge.

This action arises from the government's testing of atom bombs in Nevada in the 1950's. The plaintiff, Jeff Allen Fountain, contends he had contracted leukemia because the government knowingly and intentionally subjected him to a nuclear explosion to determine the harmful effects of radiation. The case is before the court on the motion to dismiss of the United States, Harold Brown, Clifford Alexander, W. Graham Claytor and Max Clelland.

Solely for the purpose of ruling on the motion to dismiss the court can summarize the facts pleaded by plaintiffs. In 1954, while Mr. Fountain was a citizen and resident of Arkansas, he enlisted in the United States Marine Corps. In 1955, while he was on active duty, he was ordered to Nevada. On March 22, 1955, while he was in his customary military attire, he was ordered to

crouch in a field as the government exploded an atom bomb approximately 3500 yards from him. As soon as the explosion commenced he was ordered to march toward the center of the explosion. He was able to approach within 500 yards of the center of the explosion before the heat and wind stopped him. When the drill was over he was swept with a broom to remove some of the radioactive dust. The sweeping was the only measure taken by the government to protect Mr. Fountain from the effects of radiation.

When Mr. Fountain was made to participate in the atom bomb testing the government knew atomic radiation had lethal effects. Mr. Fountain's participation in the test was to increase and refine the government's knowledge of the harmful effects of radiation.

In 1959 Mr. Fountain was discharged from the Marines, but remained on reserve status until 1962. While he was in the Marines the government never warned him that his participation in the atomic explosion would increase his risks of contracting certain diseases, including leukemia. The government never had plaintiff examined by a physician to ascertain the extent of plaintiff's injuries. The government never took any measures to minimize the effects of the radiation.

After Mr. Fountain was discharged from the Marines the government never warned Mr. Fountain of his increased risk of cancer and never provided him with medical examinations. The government took affirmative steps to hide the extent of harm caused by radiation exposure and to hide its participation in radiation testing on military personnel.

In 1979 Mr. Fountain was diagnosed as having chronic myelocytic leukemia. He contends the exposure to radiation during the atom bomb test and the government's failure to take any post-exposure measures to protect him from its effects are a proximate cause of his leukemia. He contends the government's failure to warn and failure to provide adequate medical examinations kept his leukemia from being discovered sooner than it was.

In 1956 Mr. Fountain married Benita B. Fountain, who is also a plaintiff in this case. The marital domicile has been in Arkansas.

On January 16, 1980, Mr. and Mrs. Fountain filed a claim for $5,000,000.00 with the Veterans Administration contending the exposure to radiation and the failure to give warnings or instructions about the effects of radioactive fallout caused his leukemia. He claimed $5,000,000.00 to compensate him for medical expenses, pain, suffering, mental anguish and to compensate Mrs. Fountain for her loss of consortium.

On October 20, 1980, Mr. and Mrs. Fountain initiated this action against the United States, Harold Brown, Clifford Alexander, W. Graham Claytor, Charles E. Wilson, Robert T. Stevens, Charles S. Thomas, Max Clelland, and certain unnamed officers and officials of the Department of the Navy, the Atomic Energy Commission, the United States Army, the Veterans Administration and the United States Navy. He contends the acts and omissions of the government and the named and unnamed officials constituted a violation of his rights under the First, Fourth, Fifth, Eighth, and Ninth amendments of the United States Constitution. He also claims damages for the negligence and intentionally tortious conduct of the defendants under the Federal Tort Claims Act. Mrs. Fountain seeks compensation for her loss of consortium and the expenses she has incurred in providing her husband with medical care. Both Mr. and Mrs. Fountain seek punitive damages.

We hold all claims must be dismissed as they are barred by the principles announced in *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950); *United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954); *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1976), and *Miller v. United States,* 643 F.2d 481 (8th Cir. 1980) (On Rehearing En Banc).

In *Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950), the Supreme Court held that the Federal

Tort Claims Act is not a waiver of sovereign immunity with respect to claims "for injuries to servicemen where the injuries arise out of or in the course of activity incident to service". The court gave three reasons for its holding. First, it held that actions by servicemen against the sovereign had not been permitted historically. Second, it held that as the Federal Tort Claims Act does not establish a uniform standard of care but adopts the law of the place of the wrong to determine liability, it would be anomalous to apply the Act to the uniquely federal relationship existing between the military and the sovereign. Third, it held that Congress did not intend the Tort Claims Act to apply as evinced by the statutory scheme for service related injuries already in existence when the Act was promulgated. Fourth, the court mentioned the disruption of discipline which would occur if servicemen were allowed to maintain such actions.

In *United States v. Brown*, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954), the court held that a discharged veteran could maintain an action under the Tort Claims Act for injuries he incurred at a Veterans Administration Hospital. The court distinguished *Feres*, op. cit., on the grounds that Mr. Brown was not on active duty or subject to military discipline when the injury occurred; that Mr. Brown's claim was "not foreign to the broad pattern of liability which the United States undertook by the Tort Claims Act;" that Mr. Brown's injury did not arise out of or in the course of military duty even though he was in the Veterans Hospital because he had been in the service and because he had received an injury in the service; and that to hold the government liable for negligence occurring in VA hospitals would not constitute a sharp break with tradition.

In *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1976), the court held the manufacturer of a device who might be liable to an injured serviceman could not maintain an action for indemnity against the government. It reasoned that the relationship between the supplier and the military was distinctively federal and it would be anomalous to apply the vagaries of state law incorporated into the Tort Claims Act to the relationship. It also held that the claim for indemnity would have an adverse effect on military discipline as courts would be involved in second-guessing the military.

In *Miller v. United States*, 643 F.2d 481, 493 (8th Cir. 1980) in its opinion on rehearing en banc the court held that each action by a serviceman against the government had to be examined on its own facts to "determine whether they fall within the reasons given by the Supreme Court for its conclusion in *Feres*. *Cessante ratione, cessat ipsa lex.*"

■ It is clear that Mr. Fountain's own claim against the United States for the injuries he received on March 22, 1955, is barred by *Feres*. Mr. Fountain was on active duty and was following the express orders of his military superiors. To hold the government liable for forcing Mr. Fountain to subject his body to radioactive fallout would involve second-guessing the military, the very evil *Feres* held should be avoided. It also would do violence to legal tradition to allow Mr. Fountain to maintain a claim for the injuries he received while he was on active duty following express military orders. The injuries Mr. Fountain sustained on March 22, 1955, clearly were "incident to service" as they were injuries which his military commanders knew he would sustain while following their orders.

We hold that the harm Mr. Fountain received after 1955, but before termination of his military status in 1962, cannot sustain his cause of action against the United States under *Feres*. Mr. Fountain contends that the government's failure to warn, failure to instruct, failure to provide him with proper medical treatment and testing, and its affirmative acts of hiding the information from him were a proximate cause of his leukemia. During most of this time Mr. Fountain was on active duty and he remained subject to military discipline until his final discharge from the Reserves in 1962. To hold the government liable for failing to warn or instruct its soldiers, or for failing to provide them with additional

medical care or testing or for taking steps to keep the soldiers uninformed about certain facts or opinions would involve second-guessing the military with respect to its relationship with its soldiers. Historical precedence and the deleterious effects on military discipline weigh against imposing liability for such acts and omissions.

■ We also hold that Mr. Fountain's claim for the tortious acts and omissions of the government occurring after his discharge from the Reserves is barred by *Feres.* Mr. Fountain contends that after he attained civilian status the government failed to warn or instruct him concerning the harmful effects of exposure to radioactive fallout. He pleads that the government failed to provide him with proper medical care and testing and took affirmative steps to keep secret the extent of the harm caused by the exposure to high levels of radioactivity. The duty to warn, instruct, or disclose arises only in certain situations. The law never imposes a duty to warn, instruct, or disclose unless there is some other nexus between the parties. In the case at bar the duty to warn arises because the government subjected Mr. Fountain to a danger and having done so, arguably became under a duty to take remedial steps to minimize Mr. Fountain's risk. The act which gave rise to the government's duty to warn, instruct or disclose was subjecting Mr. Fountain to the radioactive fallout while he was in the military. We hold that as the act which gave rise to the duties to warn, instruct or disclose is one for which no claim may be made against the government, the subsequent omissions of the government are within the scope of *Feres.* The nexus between the act of exposing Mr. Fountain to radioactive fallout and the government's failure to take subsequent remedial measures is strong and direct. The connection between the act of exposing him to radioactivity and failing to warn him after he had been discharged from the military is not merely antecedent. Any harm Mr. Fountain received after he was discharged from the Marines due to the government's failure to warn arose directly and actually from his exposure to radioactive fallout on March 22, 1955, and as such

is incident to his military service. Compare *United States v. Brown*, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954) where the claimant's military service was merely antecedent, his military service being a requirement for his admission to the Veterans Administration Hospital where he suffered the injury.

■ Mr. Fountain has also claimed damages from the United States for violating his rights under the First, Fourth, Fifth, Eighth and Ninth amendments to the United States. We hold that the United States has not waived its sovereign immunity with respect to actions alleging violation of constitutional rights. *Jaffee v. United States*, 592 F.2d 712, 717 (3rd Cir. Feb. 1979) ("Because Jaffee has sued the Government itself, *Bivens (v. Six Unknown Named Agents of FBI*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)) and *Butz (v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) do not afford him a traversable bridge across the moat of sovereign immunity.")

■ We also hold that even if the United States had waived its sovereign immunity for constitutional violations, because plaintiff's claim arose from his activities as a serviceman it is barred by the principles of *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). As stated in *Jaffee v. United States*, 468 F.Supp. 632, 635 (D.N.J. March, 1979):

> "To the extent that *Feres* is predicated on the need for maintaining military discipline and avoiding judicial review of military orders, that consideration apparently applies with equal force to the negligence, intentional torts and unconstitutional actions of (the government)."

■ We also hold that Mr. Fountain's claim for constitutional violations fails to state a cause of action. "Not even the most general clauses of the Constitution . . . should be read as conferring upon the courts the right to superintend every action of government that may adversely affect some citizen." *Loge v. United States*, 662 F.2d 1268, 1275 (8th Cir. 1981).

As we have held that every claim for compensatory damages Mr. Fountain has

pleaded against the United States must be dismissed, his claim for punitive damages against the government must also be dismissed.

Mr. Fountain also seeks compensatory and punitive damages from certain named and unnamed individuals who he had pleaded are the present or past officers and officials responsible for exposing him to the radioactive fallout and for failing to take subsequent remedial measures.

The Tort Claims Act does not affect actions against individuals even though they are government employees. Individuals also are not the sovereign and any immunity they enjoy is not based on sovereign immunity. *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) held that sovereign immunity barred an action against the government as the Federal Tort Claims Act did not waive the government's immunity for claims incident to service. Even though *Feres* addressed the issue of sovereign immunity, its reasoning has been applied to bar actions against the individual military officers and government officials for injuries incident to service as the same reasoning for barring servicemen's actions against the government apply to actions against individual military superiors. *Bailey v. DeQuevedo*, 375 F.2d 72 (3rd Cir. 1967); *Jaffee v. United States*, 468 F.Supp. 632 (D.N.J.1979); *Hass v. United States*, 518 F.2d 1138 (4th Cir. 1975); *Mattos v. United States*, 412 F.2d 793 (9th Cir. 1969).

Mrs. Fountain is a party-plaintiff seeking compensation for the medical expenses she has incurred on behalf of her husband, compensation for her loss of consortium and punitive damages. We hold that Mrs. Fountain's claim is barred as the reasons for disallowing a soldier's claim for his service related injuries announced in *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), bar her cause of action. See, *Harrison v. United States*, 479 F.Supp. 529 (D.Conn.1979), holding *Feres* bars a serviceman's wife's claim for loss of consortium.

This court is aware of four cases arising from the military's atomic testing in Nevada in the 1950's. *Jaffee v. United States*, 468 F.Supp. 632 (D.N.J.1979); *Reynolds v. United States*, No. C–2–75–427 (S.D.Ohio, E.D., Feb. 8, 1976); *Broudy v. United States*, No. 79–02626 L E W G X (C.D.Calif. Jan. 3, 1980); *Hinkie v. United States*, 524 F.Supp. 277, (E.D.Pa.1981). In *Jaffee*, *Reynolds* and *Broudy*, the causes of action were held barred. In *Hinkie* the court pointed out that the injured serviceman was not making a claim in his own behalf, that the plaintiffs' cause of action was not for loss of the companionship of the serviceman, but plaintiffs were seeking compensation for their own physical injuries resulting from their own exposure to radiation.

Although several of the named individual defendants have not answered or moved to dismiss, we find plaintiff's cause of action against all defendants should be dismissed. In ruling on the motion to dismiss filed on behalf of the United States and four individual defendants we have relied on principles which would bar plaintiffs' cause of action not only against the United States and the four individual movants but also against the other named and unnamed defendants. A separate order will be entered which dismisses plaintiffs' cause of action with prejudice.