**James O. HAMPTON, Jr., Plaintiff,**

v.

**UNITED STATES of America; The Veterans Administration; Defense Nuclear Agency; Department of Energy; Nuclear Regulatory Commission; and The United States Navy, Defendants.**

**Civ. No. 83–2168.**

United States District Court,
W.D. Arkansas,
Fort Smith Division.

Dec. 13, 1983.

James P. Mathieson, Pruitt & Hodnett, Fort Smith, Ark., for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., W. Asa Hutchinson, U.S. Atty., Mark W. Webb, Asst. U.S. Atty., Fort Smith, Ark., Paul F. Figley, Senior Trial Atty., Pamela L. Wood, Trial Atty., Torts Branch, Civil Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

### INTRODUCTION

On June 3, 1983, plaintiff instituted this action against the United States of Ameri-

ca, the Veterans Administration, the Defense Nuclear Agency, the Department of Energy, the Nuclear Regulatory Commission and the United States Navy, for injuries sustained by the plaintiff as a result of the conduct of defendants in exposing plaintiff to nuclear radiation during atmospheric testing of nuclear weapons during plaintiff's tour of duty in the United States Navy in and around Bikini Atoll. Plaintiff further alleges that defendants were negligent in not contacting plaintiff subsequent to his discharge after defendants became aware of the health problems caused by the nuclear testing. Plaintiff alleges that jurisdiction arises under 46 U.S.C. §§ 781–790 and 28 U.S.C. § 1346(b).

Defendants filed a motion to dismiss on October 4, 1983, which may or may not have been timely. However, because this Court lacks subject matter jurisdiction, it is immaterial whether the motion to dismiss was timely filed, and the Court will treat the motion as "suggestions" to the Court that this Court is precluded from exercising subject matter jurisdiction over plaintiff's claim.

### Discussion

It is well-settled that the United States yet adheres to the doctrine of *rex non potest peccare, i.e.,* "the king can do no wrong" under the guise of "sovereign immunity." Therefore, absent a waiver of this sovereign immunity, the United States is immune from accountability for its wrongful acts.

The United States Supreme Court has unmistakably held that the Federal Tort Claims Act does not constitute a waiver of sovereign immunity for injuries "to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950). This has become known as the "*Feres* doctrine," anathema to servicemen whose service to this country has included exposure by the government to harmful nuclear radiation, LSD, or toxic defoliants. *See Laswell v. Brown,* 683 F.2d 261 (8th

Cir.1982); *In re Agent Orange Product Liability Litigation,* 506 F.Supp. 762 (E.D. N.Y.1980); *Thornwell v. United States,* 471 F.Supp. 344 (D.D.C.1979). The "*Feres* doctrine" also bars claims under the Public Vessels Act and the Suits in Admiralty Act, 46 U.S.C. §§ 781, *et seq.,* 741 *et seq. Hillier v. Sou. Towing Co.,* 714 F.2d 714 (7th Cir.1983); *Cusanelli v. Klaver,* 698 F.2d 82 (2d Cir.1983); *Charland v. United States,* 615 F.2d 508 (9th Cir.1980).

The Supreme Court has recently reaffirmed the "*Feres* doctrine." *Chappell v. Wallace,* —— U.S. ——, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983).

The "*Feres* doctrine" is the only judicially created exception to the Federal Tort Claims Act (FTCA). *Laswell, supra.* The rationale adopted for grafting onto the FTCA a judge-made exception in addition to those enacted by Congress include: (1) the "distinctively federal" nature of the relationship between the government and members of the military; (2) the availability of alternative remedies under the Veterans Benefits Act; and (3) the effect on military discipline. *Stencel Aero Eng'g Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977). The "*Feres* doctrine" has long been criticized by courts and commentators alike. *Labash v. United States Dept. of Army,* 668 F.2d 1153 (10th Cir.1982); *Monaco v. United States,* 661 F.2d 129 (9th Cir.1981); *Broudy v. United States,* 661 F.2d 125 (9th Cir.1981); *Hunt v. United States,* 636 F.2d 580 (D.C.Cir.1980); *Veillette v. United States,* 615 F.2d 505 (9th Cir.1980); Note, *From Feres to Stencel: Should Military Personnel Have Access to FTCA Recovery?,* 77 MICH.L.REV. 1099 (1979). Nonetheless, it is beyond question that it is the law.

A resourceful attorney recognizing this would, quite naturally, assert that although the sovereign is immune from such suits under the FTCA, the Public Vessels Act, and the Suits in Admiralty Act, a *Bivens*-type action would be available to provide a remedy for what, in many such

cases, would constitute a violation of the serviceman's rights not to be deprived of life, liberty, or property without due process of law by being poisoned by radiation, by hallucinogenic drugs, or by toxic substances. *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In *Bivens,* the Court implied a cause of action for damages from the Fourth Amendment in suits against federal employees. *See also Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (Eighth Amendment); *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (Fifth Amendment). However, *Bivens* and its progeny do not waive sovereign immunity for actions against the United States; it recognizes a cause of action only against federal officials. *Bivens,* 403 U.S. at 410, 91 S.Ct. at 2011. *Respondeat superior* is thought to be unavailable in such actions. *Kite v. Kelley,* 546 F.2d 334 (10th Cir.1976); *Black v. United States,* 534 F.2d 524 (2d Cir. 1976).

■ However, even if a serviceman names those individuals that were actively involved in the alleged constitutional violation, the majority position is that the *"Feres* doctrine" bars claims based upon constitutional grounds as well as statutory or common law claims. *Laswell, supra; Broudy, supra.*

Thus, the law precludes servicemen, whose activities are "incident to service," from any legal remedy or redress (other than the limited remedies under the Veterans Benefits Act) for acts of negligence, recklessness, or maliciousness of the United States Government or its officials. *Laswell, supra; Stanley v. CIA,* 639 F.2d 1146 (5th Cir.1981).

■ With respect to plaintiff's claim that the failure to warn him of the potential danger after his termination from service constitutes a tort cognizable under the FTCA, the law clearly is that this is a continuation of the same wrong for which the government is immune under *Feres,* and is barred as well. *Laswell, supra;*

*Stanley, supra; Henning v. United States,* 446 F.2d 774 (3rd Cir.1970). For such an action to be cognizable, the post-discharge tort must occur in its entirety after the plaintiff becomes a civilian and thus protected by the laws and the Constitution. *Laswell, supra; Stanley, supra. See United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954) (negligent post-separation operation performed to correct a war injury held compensable).

Nowhere is the American version of sovereign immunity more forcefully demonstrated than in the *"Feres* doctrine." The *"Feres* doctrine" is a modern-day exemplification of the powers of the absolute monarchy of the sixteenth century. As Justice Miller wrote in 1882:

Notwithstanding the progress which has been made since the days of the Stuarts in stripping the crown of its powers and prerogatives, it remains true today that the monarch is looked upon with too much reverence to be subjected to the demands of the law as ordinary persons are....

*United States v. Lee,* 106 U.S. 196, 208, 1 S.Ct. 240, 250, 27 L.Ed. 171 (1882).

In this country the concept of sovereign immunity was first declared to be the law by Chief Justice Marshall without explanation in 1821. *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 5 L.Ed. 257 (1821). The accepted rationale is that, as Justice Holmes wrote:

A sovereign is exempt from suit, not because of any formal conception or obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends.

*Kawananakoa v. Polyblank,* 205 U.S. 349, 353, 27 S.Ct. 526, 527, 51 L.Ed. 834 (1907).

As Professor Prosser notes, opinions vary as to the justice of the rule:

Just how this feudal and monarchistic doctrine ever got itself translated into the law of the new and belligerent democratic republic in America is today a bit hard to understand.

Prosser, *Law of Torts*, § 125, at p. 997 (3rd Ed.1964).

Although the country has survived quite well with "this feudal and monarchistic doctrine," it is anomalous that, despite the fact that Congress has gradually created exceptions to the rule of sovereign immunity and has chosen only to preclude servicemen's claims arising from combat activities during time of war and claims arising in foreign countries, 28 U.S.C. § 2680(j), (k), the Supreme Court would judicially graft onto the Act another, broader exception barring tort claims by those most entitled to justice at the hands of the government— the serviceman.

■ Recognizing this, the Court of Appeals for the Eighth Circuit has utilized the doctrine of *cessante ratione, cessat ipsa lex, i.e.,* "the reason of the law ceasing, the law itself also ceases." *Miller v. United States*, 643 F.2d 481, 493 (8th Cir.1980).

In *Miller,* the Court directed the district courts to examine each case on its own facts to ascertain whether the reasons proffered in support of the *"Feres* doctrine" are furthered by application of the rule.

It is said, in support of *Feres,* that the relationship between the government and members of the military is "distinctively federal" in nature. *Stencel, supra.* This is undoubtedly true; however, the "distinctively federal" nature of this relationship merely counsels against the application of the law of any particular state, not in favor of a total bar to recovery. Further, the "distinctively federal" nature of the relationship does not make inappropriate the application of federal laws and guarantees provided by the federal constitution. Nonetheless, the weight of precedent is that claims based upon the constitution or federal statutes are precluded by *Feres. Laswell, supra; Broudy, supra.*

The *"Feres* doctrine" may also have the effect of maintaining discipline in the armed forces, for it does allow the government to subject servicemen to experimentation with dangerous drugs, toxic chemicals and hazardous radiation without their knowledge or consent. No doubt several servicemen would refuse and would face court-martial rather than engage in the military's experimentation with hallucinogenic drugs, toxic defoliants, or nuclear radiation, were they to be informed of the facts. The Supreme Court has nevertheless concluded that the Constitution and the public policy of our nation require that the government be free to conduct such experiments or inflict such injuries upon the men and women who risk their lives in the defense of our nation. The Supreme Court made this abundantly clear in *Chappell v. Wallace, supra:*

> ... no military organization can function without strict discipline and regulation that would be unacceptable in a civilian setting.... "[T]he rights of men in the armed forces must perforce be conditioned to meet certain overriding demands of discipline and duty ..."
>
> \*     \*     \*     \*     \*     \*
>
> "Orderly government requires that the judiciary be scrupulous not to interfere with legitimate Army matters...."
>
> \*     \*     \*     \*     \*     \*
>
> [W]e must be "concern(ed) with the disruption of [t]he peculiar and special relationship of the soldier to his superiors that might result if the soldier were allowed to hale his superiors into court."
>
> ...

Several bills have been proposed in Congress to facilitate remedies for persons such as plaintiff.

As the Court noted in *Laswell:*
Several bills have been proposed in Congress to facilitate remedies for persons such as Laswell. *See* Comment, *Constitutional Tort Remedies: A Proposed Amendment to the Federal Tort Claims Act,* 12 CONN.L.REV. 492, 530–37 (1980). However, no fundamental changes have been adopted. Private bills, which the FTCA was designed to reduce, have been successfully employed for at least one plaintiff. An Act, for the relief of James R. Thornwell, Priv.L. No. 96–77, 94 Stat. 3618–19 (1980) (awarding $625,000 to a trustee to act on behalf of Thornwell). *See Thornwell v. United*

*States, supra,* 471 F.Supp. at 345–46. *See also Monaco v. United States,* 661 F.2d at 134 n. 3 (expressing the court's hope that Congress will either grant individual relief in deserving cases or amend the FTCA to allow such recoveries in the federal courts).

Until that occurs, this Court must continue to examine each case on its own facts to "determine whether they fall within the reasons given by the Supreme Court for its conclusion in *Feres.    Cessante ratione, cessat ipsa lex." Fountain v. United States,* 533 F.Supp. 698 (W.D.Ark.1981), *quoting Miller v. United States, supra.*

In making this determination, however, this Court is not writing on a "clean slate." The facts of this case are identical in all pertinent respects to those presented in *Fountain, supra,* and numerous other radiation cases held to be barred by *Feres.*

Thus, precedent dictates that the instant case is not appropriate for the application of the doctrine of *cessante ratione, cessat ipsa lex,* and *stare decisis* mandates that plaintiff's claim is barred by *Feres* and that this Court, therefore, lacks jurisdiction of the subject matter of the instant action.

For the reasons stated above, plaintiff's complaint will be dismissed by separate order pursuant to Rule 12(b)(1), Fed.R. Civ.P.