**Daniel Edward BYNUM, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION and FMC Corporation, Defendants.**

**No. WC82–51–NB–D.**

United States District Court,
N.D. Mississippi, W.D.

Nov. 27, 1984.

Cliff Finch, Batesville, Miss., Melvin Block, Brooklyn, N.Y., for plaintiff.

Lee Davis Thames, Jackson, Miss., for defendants.

### MEMORANDUM OPINION

BIGGERS, District Judge.

This cause came before the court on the oral motion by defendant FMC Corporation

(FMC) to reconsider the denial of a previous motion for summary judgment by FMC in this case. After considering the pleadings, affidavits, memoranda, and stipulations of the parties, the court rendered an oral opinion granting summary judgment in favor of FMC. This opinion sets forth in detail the reasons for the court's decision.

The parties hereto have entered into the following two stipulations:

(1) This court has the authority to reconsider a previous ruling on a motion for summary judgment; and

(2) The vehicle in issue in the present case was manufactured in accordance with precise design specifications furnished by the United States Government, the vehicle conformed to the specifications, and the manufacturer FMC knew of no patent dangers in the vehicle that were not known to the United States Government.

This case arose from the following uncontested facts. Plaintiff, a resident of Water Valley, Mississippi, seeks recovery for injuries sustained on July 18, 1978, during National Guard military training at the federal enclave of Fort Stewart, Georgia.[1] The injuries complained of occurred when a United States Army vehicle, an M548 cargo carrier, plunged from a bridge into a creek bed. The plaintiff, who was riding in the vehicle turret as an air gunner, suffered severe injuries when the turret gun rotated freely and broke both his legs. The plaintiff alleges that the vehicle was defective due to both a faulty left track which caused the plunge and a faulty gun locking mechanism.

Due to the parties' stipulations, this case involves only alleged "design defects" rather than negligent manufacture. The United States has no liability under the Federal Tort Claims Act for injuries sustained by the plaintiff incident to military service. *See Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). Therefore, the plaintiff seeks recovery only from the manufacturer FMC under the theories of strict liability, negligence, and breach of warranty. FMC contends that under the "government contractor" or "governmental specification" defense,[2] it shares the immunity to suit of the United States under all the theories asserted by the plaintiff.

Public contractors have long been accorded immunity from tort under state law when the injury complained of does not result from performing the work in a tortious manner, *see, e.g., Roland v. Jumper Creek Drainage District,* 4 F.2d 719, 721–22 (D.C.Fla.1925) (non-liability of contractor hired by state for damage resulting from construction according to plans of state); *Converse v. Portsmouth Cotton Oil Refining Corp.,* 281 F. 981, 984 (4th Cir.), *cert. denied,* 260 U.S. 724, 43 S.Ct. 13, 67 L.Ed. 482 (1922) (non-liability of contractor hired by state for damage resulting from construction according to plans of state when incidental injury necessary and unavoidable consequence of work), *see generally,* Annot., 9 A.L.R.3d 389, 389–90 (1966) (cases involving immunity of state contractor when no negligent or wilful tortious conduct). Similarly, the Supreme Court has recognized that contractors of the federal

---

**1.** A previous decision of the court in this case, rendered on February 1, 1984, has established that the law of the State of Mississippi, rather than the law of the federal enclave of Fort Stewart, Georgia, is controlling in this case. *Cf. Brown v. Caterpillar Tractor Co.,* 696 F.2d 246, 249 n. 6 (1982) (specific recognition of controlling effect of state rather than federal law in suits by servicemen against military supplies); *In re "Agent Orange" Product Liability Litigation,* 635 F.2d 987, 995 (2d Cir.1980), *cert. denied,* 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981) (same); *see also, e.g., Day & Zimmermann, Inc. v. Challoner,* 423 U.S. 3, 4–5, 96 S.Ct. 167, 167–168, 46 L.Ed.2d 3, 5 (1975) (per curiam) (re-

liance on state rather than federal law in suit by serviceman against military supplier); *Foster v. Day & Zimmermann, Inc.,* 502 F.2d 867 (8th Cir.1974) (same); *Whitaker v. Harvell-Kilgore Corp.,* 418 F.2d 1010 (5th Cir.1969), *reh'g. denied,* 424 F.2d 549 (5th Cir.1970) (same); *Boeing Airplane Co. v. Brown,* 291 F.2d 310 (9th Cir. 1961) (same).

**2.** The defense has been denominated in case law as either the "government contractor" or the "government specification" defense. In this opinion, we shall use such terms interchangeably.

government acquire a protective cloak when they perform such work in accordance with government specifications, although the Court did not specifically use the word "immunity." *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18, 20–22, 60 S.Ct. 413, 414–415, 84 L.Ed. 554 (non-liability of contractor of United States Government when work performed properly, apparently through imputation of governmental immunity to contractor under agency principles).

Although the government contractor defense has not been applied in either Mississippi or this circuit, it was recently discussed by the Fifth Circuit Court in *Hansen v. Johns-Mansville Products Corp.*, 734 F.2d 1036, 1045 (5th Cir.1984) (inapplicability of government specification defense in case not involving instrument of war absent state precedent and on facts in issue). *Cf. Whitaker v. Harvell-Kilgore Corp.*, 418 F.2d 1010, 1014 (5th Cir.1969), *reh'g. denied*, 424 F.2d 549, 551 (5th Cir. 1970) (contractor not immune under agency principles where contract expressly provided contractor not agent of government; government contractor defense not raised); *Challoner v. Day & Zimmermann, Inc.*, 512 F.2d 77, 82–83 (5th Cir.), *vacated and remanded for misapplication of conflict of law rules*, 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975) (possible liability of contractor for defective design under strict liability principles; government contractor defense not raised). Thus, this court has guidance through case law as to when the doctrine should apply, if at all.

In *Feres v. United States*, 340 U.S. 135, 146, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the Supreme Court determined that the United States could not be held liable under the Federal Tort Claims Act for injuries arising out of or incident to military service. This doctrine was extended in *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977), wherein the Court held that the Federal Tort Claims Act prevents a third party from being indemnified by the United States for damages paid by the third party to a member of the military injured during or incident to military service. In reaching this decision, the Court in effect recognized that indirect liability of the government is no more proper than the direct liability prohibited by *Feres. See* 431 U.S. at 673–74, 97 S.Ct. at 2058–59.

In cases such as the one at bar, liability of a government contractor would indirectly impose liability upon the government, inasmuch as the increased exposure of the manufacturer would be reflected in higher contract prices to the government. *Accord, McKay v. Rockwell International Corp.*, 704 F.2d 444, 449 (9th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 711, 79 L.Ed.2d 175 (1984). Furthermore, the court is mindful that the advanced technology involved in the construction of an instrument of war may necessitate risks beyond those associated with normal consumer goods. *See, e.g., In re "Agent Orange" Product Liability Litigation*, 506 F.Supp. 737 (E.D.N.Y.1979), *rev'd. on other grounds*, 635 F.2d 987 (2d Cir.1980), *cert. denied*, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981). Liability on the part of the contractor is particularly inappropriate when dealing with war weapons, wherein a manufacturer may be compelled by federal law to produce the weapon with no ability to negotiate specifications, contract prices, or terms. *In re "Agent Orange" Product Liability Litigation*, 506 F.Supp. 762, 794 (E.D.N.Y.1980), *cert. denied*, —— U.S. ——, 104 S.Ct. 1417, 79 L.Ed.2d 743 (1984). The court is further impressed by the widespread acceptance of the government contractor defense throughout the nation, which was characterized by the Pennsylvania Supreme Court as follows:

In every jurisdiction in this Country where the question has been passed upon (and that includes the Supreme Court of the United States, other Federal courts and courts of approximately half of the States), it has been uniformly held that in the absence of negligence or wilfully tortious conduct on the part of an independent contractor, he is not liable for injury to another's property which is caused by

the performance of his contract with a governmental instrumentality in accordance with its plans and specifications. There has not been cited to us, nor has our independent research disclosed, a single case holding to the contrary (footnotes omitted).

*Valley Forge Gardens, Inc. v. James D. Morrisey, Inc.,* 385 Pa. 477, 123 A.2d 888, 890 (1956). In accordance with this great weight of authority, this court can reasonably make an *Erie* guess that the courts of the State of Mississippi would apply the government contractor defense if and when such a situation were presented. *See Bernhardt v. Polygraphic Co. of America,* 350 U.S. 198, 204–05, 76 S.Ct. 273, 277, 100 L.Ed. 199, 206 (1955). Thus, this court concludes that the government contractor defense should be applied to shield a manufacturer from liability when such work is performed in accordance with government specifications and there has been no negligence or wilfully tortious conduct by the independent contractor.

In *Hansen v. Johns-Manville Products Corp.,* 734 F.2d at 1045–46, the Fifth Circuit set forth the three elements of the government specification defense: (1) establishment of product specifications by the government, (2) manufacture in accordance with those specifications, and (3) government knowledge equal to that of the manufacturer of the hazards. *Id.* This court believes that the principles that justify application of the government contractor defense apply regardless of the theory of liability asserted. *Accord, In re "Agent Orange" Product Liability Litigation,* 506 F.Supp. at 796, *Casabianca v. Casabianca,* 104 Misc.2d 348, 428 N.Y.S.2d 400, 402 (Sup.Ct.1980). Thus, a military supplier who satisfies the three enumerated criteria is shielded from liability under any theory, whether strict liability, negligence, or breach of warranty.

In the present case, the parties have established by their stipulations that FMC satisfies all three of the enumerated criteria. FMC thus is shielded from liability under all the theories asserted. Accordingly, the motion for summary judgment by FMC was well taken and was properly granted by this court.