The ESTATE OF David L. PORTNOY, Deceased, Jerri Bridges, Administratrix, Plaintiff,

v.

CESSNA AIRCRAFT COMPANY, Defendant,

v.

MISSISSIPPI SCHOOL OF AVIATION, et al., Attachment Defendants.

Civ. A. No. S83–0011(R).

United States District Court, S.D. Mississippi, S.D.

July 10, 1985.

Floyd J. Logan, Gulfport, Miss., for Estate of Portnoy.

Eaton A. Lang, Jr., Gulfport, Miss., for Cessna Finance Co.

Roy C. Williams, Megehee, Brown, Williams & Mestayer, Pascagoula, Miss., for Victory Aircraft, Inc.

Robert Alan Byrd, Rushing & Guice, Biloxi, Miss., Charles R. Davis, Alex A. Alston, Jr., David A. Bowers, Jackson, Miss., for Mississippi School of Aviation.

H.D. Brock, Greenwood, Miss., for Kimmel Aviation, Inc.

Thomas C. Gerity, Watkins & Eager, Jackson, Miss., for Cessna Aircraft Co.

## MEMORANDUM OPINION

DAN M. RUSSELL, Jr., Senior District Judge.

This cause is presently before the Court by motion of the plaintiff on behalf of the Estate of David L. Portnoy (Portnoy) against the defendant, Cessna Aircraft Company (Cessna). The plaintiff has filed a motion for partial summary judgment contending that Cessna is collaterally estopped from controverting any strict liability claim for the manufacture of a defective product due to the judgment in *Nancy Baggs Germone, et al. v. Cessna Aircraft Company*, No. 3–78–1193–G (N.D.Texas, June 8, 1981). A brief restatement of the pertinent facts are as follows.

On November 11, 1976, a military 02–A airplane that had been manufactured by Cessna crashed in the Mississippi Sound near Bay St. Louis, Mississippi. Major John T. Baggs and Sergeant David L. Portnoy, the only occupants, suffered fatal injuries in the crash. Major Baggs was a resident of Freehold, New Jersey and Sergeant Portnoy was a resident of Philadelphia, Pennsylvania. Portnoy, Baggs and the 02–A aircraft were assigned to the 105 Tactical Air Support Wing, 111th Tactical Air Support Group, 103 Tactical Air Support Squadron, Willow Grove Naval Air Station, Willow Grove, Pennsylvania.

Although Major Baggs was the assigned pilot of the flight and Sergeant Portnoy the listed passenger, the report submitted to the President of the Military Accident Board by Donald Simon, Cessna's Administrator of Military Relations who participated in the investigation as an advisor, concluded the most probable cause of the accident resulted from "the pilot allow[ing] the passenger control of the aircraft after which he inadvertently, through misapplication of controls, initiated the spin maneuver with insufficient altitude for recovery." Mr. Simon concluded that damage to the aircraft control column and rudder pedals, when compared to the injuries of Sergeant Portnoy's body, indicated Sergeant Portnoy was in control of the airplane at the time that it crashed.

On September 27, 1978, Nancy Baggs filed a complaint against Cessna in the United States District Court for the Northern District of Texas, Dallas Division. Jurisdiction was based upon diversity of citizenship and the fact that Cessna had qualified to do business and had appointed an agent for service of process in Dallas, Texas. At trial, the jury was instructed only on a theory of defective design of the propeller and on the issue of whether Major Baggs operated the aircraft in a manner that would constitute a misuse. The jury answered the Court's special interrogatories in favor of Baggs and awarded dam-

ages totalling $900,000.00 to Mrs. Baggs and her four children.

A $900,000.00 judgment was entered against Cessna on July 13, 1981. Cessna moved for judgment notwithstanding the verdict, or, alternatively, for a new trial, which the Court denied on August 17, 1981. Thereafter, Cessna perfected its appeal to the United States Court of Appeals for the Fifth Circuit. Baggs filed a cross appeal.

By joint motion of the parties, the case was remanded to the District Court on October 21, 1981. On October 28, 1981, the District Court set aside the verdict and judgment and granted Cessna a new trial "upon agreement of the parties and upon reconsideration of the Defendant's Motion for a New Trial previously filed herein, ..." Upon the same day the Court entered an Order Appointing Guardian Ad Litem, an Agreement for Judgment and Release, and a Final Judgment. The Final Judgment recited in part that:

> [T]he parties having represented to the Court and the Court having found that defendant denies liability in this case and that this is a judgment entered pursuant to compromise and settlement and not a finding of liability on the part of defendant, and it appearing to the Court that said agreement for judgment and release is in all things fair and just, and that judgment should be entered in accordance therewith; ....

On September 16, 1981, more than three months after the *Baggs* trial, Marvin Portnoy and Florence Portnoy, the parents of David L. Portnoy, deceased, were granted Letters of Administration "for suit purposes only" by the Register for Probate of Wills and Grant of Letters Testamentary and of Administration of Philadelphia County, Pennsylvania. Jerri Bridges, a secretary in the office of Hopkins, Logan, Vaughn and Anderson, was granted Letters of Administration of Portnoy's estate by the Chancery Court of Hancock County, Mississippi on February 24, 1982. She initially filed a complaint against Cessna in the United States District Court for the Southern District of Mississippi, Southern Division, on April 22, 1982. That suit, which was assigned Civil Action No. S82–0233(C), was dismissed by the trial court for lack of in personam jurisdiction and affirmed on appeal. *See Estate of Portnoy v. Cessna Aircraft Company,* 730 F.2d 286 (5th Cir.1984).

The instant action was filed in the Chancery Court of Hancock County, Mississippi on October 29, 1982 as Cause Number 16,-186. It was removed from the Chancery Court to this Court on January 4, 1983. This Court, having determined that Cessna is not subject to in personam jurisdiction by virtue of the decision in *Estate of Portnoy v. Cessna Aircraft Company, supra,* is proceeding quasi in rem on the basis of a complaint for attachment served upon three Mississippi corporations who are indebted to Cessna for civilian or general aviation purchases. *See Estate of Portnoy v. Cessna Aircraft Company,* 603 F.Supp. 285 (S.D.Miss.1985).

Portnoy's complaint and bill for attachment alleges counts in strict liability in tort, breach of warranty, failure to warn and punitive damages. The complaint for bill of attachment demands a judgment against Cessna in the amount of $2,500,-000.00 as compensatory damages and $2,500,000.00 as punitive damages. The strict liability and breach of warranty counts allege that the airplane generally was defectively designed, manufactured, tested, assembled and serviced. The failure to warn count alleges that the airplane had a defective propeller hub which had a propensity to develop cracks and lose blades, and that Cessna failed to adequately warn and instruct users of the dangers associated with this alleged condition.

The plaintiff herein has filed this motion for partial summary judgment contending that Cessna is collaterally estopped from controverting its strict liability for the manufacture of a defective product. It is argued that these issues were decided adversely to Cessna by the jury sitting in the *Baggs* case.

When confronted with the issue of collateral estoppel in diversity cases the district

court must turn its attention to federal law which governs the collateral estoppel effect of an earlier federal judgment. *Hauser v. Krupp Steel Producers, Inc.*, 761 F.2d 204, 207 (5th Cir.1985); *Wehling v. Columbia Broadcasting Co.*, 721 F.2d 506, 508 (5th Cir.1983). In *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) the U.S. Supreme Court approved the use of offensive collateral estoppel when it was asked to determine "whether a litigant who was not a party to a prior judgment may nevertheless use that judgment 'offensively' to prevent a defendant from relitigating issues resolved in the earlier proceeding." *Id.* at 326, 99 S.Ct. at 649.

Shore had brought a stockholder's class action against Parklane Hosiery Co., Inc. and thirteen of its officers, directors, and stockholders (hereinafter simply referred to as Parklane) contending that it had issued a materially false and misleading proxy statement in connection with a merger thereby violating the Securities and Exchange Act of 1934. The SEC filed a similar suit against Parklane and requested injunctive relief. A Federal District Court found the proxy statement to be materially false and misleading as alleged and entered a declaratory judgment to that effect. Shore then moved for a partial summary judgment against Parklane asserting that it was collaterally estopped from relitigating the issues that had been resolved against it in the action brought by the SEC. The District Court's decision to deny the motion was reversed by the U.S. Court of Appeals for the Second Circuit. After precautionary instructions, the Supreme Court affirmed the appellate court's decision.

■ The Court noted that offensive collateral estoppel differs substantially from defensive collateral estoppel and should therefore be viewed with stricter scrutiny. In a case involving defensive collateral estoppel, a plaintiff is estopped from asserting a claim that the plaintiff had previously litigated and lost against another defendant. Offensive collateral estoppel occurs when a plaintiff is seeking to bar a defendant from relitigating an issue decided against him in an earlier action involving a different plaintiff. In other words, defensive collateral estoppel is used as a shield whereas offensive collateral estoppel is used as a sword. Inherent to the sword are several reasons which were articulated in *Parklane* on why the two situations should be treated differently.

First, defensive use of collateral estoppel promotes judicial economy where offensive use creates precisely the opposite incentive. When defensive collateral estoppel is used, the plaintiff is precluded from relitigating identical issues by merely switching adversaries. This encourages a plaintiff to join all potential defendants in the first action. Through offensive collateral estoppel, the plaintiff is entitled to rely on a previous judgment against a defendant without being bound by that judgment if the defendant wins. This encourages the plaintiff to adopt a "wait and see" attitude in the hope that another plaintiff in the first action will obtain a favorable judgment. Such an offensive use tends to increase the total amount of litigation since all the potential plaintiffs will have everything to gain and nothing to lose by not intervening in the first action.

A second argument against the use of offensive collateral estoppel discussed in *Parklane* was one of potential unfairness to the defendant. Such unfairness is manifested through various situations. For example, the unforseeability of future suits or the attempt to recover small or nominal damages may provide little incentive for a vigorous defense. Still another situation appears where the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result.

■ These reasons are not to be interpreted as a preference to preclude the use of offensive collateral estoppel, but rather to grant the district court broad discretion to determine when it should be applied. The general rule should be that in cases where a plaintiff could easily have joined in the earlier action *or* where, either for

reasons discussed above or for other reasons, the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel.

*Parklane Hosiery,* 439 U.S. at 331, 99 S.Ct. at 652; *Hauser,* 761 F.2d at 207, (emphasis added).[1]

■ In applying this rule this Court must first determine whether Portnoy is a "wait and see" plaintiff who could have joined the *Baggs* suit. In the exercise of its broad discretion, the trial court should not permit the use of offensive collateral estoppel when the plaintiff could easily have joined in the first action. *Charles J. Arndt, Inc. v. City of Birmingham,* 748 F.2d 1486, 1494 (11th Cir.1984). The situation involving a wait and see plaintiff is enhanced when the plaintiff in the first action has a particularly strong case or presently particularly sympathetic circumstances justifying relief. *Hicks v. Quaker Oats Co.,* 662 F.2d 1158, 1172 (5th Cir. 1981).

> By waiting until this plaintiff has litigated, other plaintiffs may hope to "ride on his coat tails" to a judgment against defendant, even though the other plaintiffs' individual cases might not be as strong and might have been treated differently in terms of liability found or relief granted if all the cases had been tried together.

*Id.*

■ It is inconceivable to this Court that discovery and trial preparation for the *Baggs* suit failed to alert the Portnoy heirs of the impending action. Certain similarities, such as the fact that Baggs and Portnoy were assigned to the same tactical air support wing, vacillates the plaintiff's contention that knowledge of the *Baggs* action was never received.

Although the record is absent of any proof of a purposeful delay, strong sympathetic circumstances inherent in the *Baggs* suit as compared to Portnoy's action, as well as a possible different finding concerning Cessna's liability to Portnoy, would only result in an injustice to the defendant should this Court allow the use of offensive collateral estoppel. Mrs. Baggs appeared in Court as a widow and mother of four young children. She also appeared against a defendant whose investigator, Donald Simon, had determined that the 02–A military aircraft crashed not as a result of the actions of Major Baggs, but as a result of the actions of Sergeant Portnoy. The issue of Portnoy's contributory negligence was not submitted to the jury in Baggs. The only issue was whether John Baggs had misused the airplane. Therefore, there is no identity of the issues concerning Cessna's defense in the *Baggs* trial and the present action. A trial before the jury may very well conclude that it was Portnoy's negligence that was the sole cause of the crash. It would be unfair to the defendant to allow the mother, father, and brother of Sergeant Portnoy to ride on the coat tails of the *Baggs* suit under such circumstances.

Other situations of possible unfairness include the attempt to recover nominal damages, the unforseeability of future suits, inconsistent previous judgments, and the lack of procedural opportunities. Although it was highly unforseeable that a future suit would follow, the damages sought by Mrs. Baggs were substantial

---

**1.** Other considerations of fairness, some of which were repeated in *Parklane,* have been considered by the Fifth Circuit and summarized in *Chemetron Corp. v. Business Funds, Inc.,* 682 F.2d 1149, 1189 (5th Cir.1982) as follows:

(1) party against whom estoppel is asserted must have had a "full and fair" opportunity to litigate the issue in the prior case;
(2) application of the doctrine must not create "injustice";
(3) application of the doctrine must not contravene any "overriding public policy;

(4) parties who are defendants in both actions must be closely scrutinized to avoid unfairness;
(5) the issue to be concluded must be identical to that involved in the prior action;
(6) in the prior action the issue must have been "actually litigated"; and
(7) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

enough to assure a vigorous defense on the part of Cessna.[2] Also, it has not been alleged that there were any previous inconsistent judgments or lack of procedural opportunities. However, to permit the use of offensive collateral estoppel at this time would preclude Cessna from asserting the government contract defense discussed by the Fifth Circuit in *Hansen v. Johns-Mansville Products Corp.*, 734 F.2d 1036, 1045 (5th Cir.1984) and first applied in Mississippi in the case of *Bynum v. General Motors Corp.*, 599 F.Supp. 155 (N.D.Miss.1984).

◼ Generally, the government contractor defense shields a manufacturer from liability when such work is performed in accordance with government specifications absent any negligence or wilfully tortious conduct by the independent contractor. A military supplier who can satisfy the enumerated criteria as enunciated in *Hansen v. Johns-Mansville Products Corp.*, 734 F.2d 1036 (5th Cir.1984) is shielded from liability under the theories of strict liability, negligence, or breach of warranty. *Bynum*, 599 F.Supp. at 158. The record in the *Baggs* trial, as well as the record in this Court, is void of any stipulations or uncontradicted evidence relating to any of the three enumerated criteria. This is due to the fact that at the time of the *Baggs* trial, and as late as June, 1984, no Texas court had adopted the government contractor defense. *Hansen*, 734 F.2d at 1045. Therefore, this issue, which bars Cessna from liability, has never been actually litigated and determined adversely to Cessna in the prior litigation. Since the general contractor defense has been recently applied in Federal District Court in Mississippi, it would constitute an unfairness and injustice to the defendant if this Court were to permit the use of offensive collateral estoppel and deny Cessna its day in Court.

The final contention facing this Court concerns the finality of the *Baggs* judgment. The plaintiff contends that since the *Baggs* trial was fully litigated prior to settlement, offensive collateral estoppel may be invoked. For support, the plaintiff relies upon *Chemetron Corp. v. Business Funds, Inc.*, 682 F.2d 1149 (5th Cir.1982). *Chemetron Corp.* was one of many cases arising out of the Westec Stock Scandal. Chemetron sued 57 defendants, including David Bintliff, a businessman and investor, who was also one of the defendants sued in a previous action by Cosmos Bank in the case of *Cosmos Bank v. Bintliff,* Civil Action No. 67–H–590 (S.D.Tex.1975). The *Cosmos Bank* was tried before a judge without a jury. The trial judge filed and entered a lengthy "Memorandum and Order" detailing his findings of fact and conclusions of law which awarded the plaintiff over $700,000 in damages and interest. Before entry of the judgment, Bintliff's counsel wrote the U.S. District Clerk stating that Bintliff and Cosmos Bank would settle only if the judge would sign an order granting a new trial so that Bintliff would be protected "against the use of the judge's findings and conclusions in other litigation." *Chemetron Corp.*, 682 F.2d at 1187. The trial judge refused to act in accordance with Bintliff's request since he failed to see any basis for the granting of a new trial. The trial judge proposed a different order and threatened to act on the plaintiff's pending motion for judgment unless his proposed order was promptly agreed to. Bintliff settled the case before judgment was entered. An order was entered dismissing the case with prejudice and withdrawing and setting aside the findings of fact and conclusions of law.

Chemetron subsequently sought to collaterally estop Bintliff from relitigating the issues decided in *Cosmos Bank*. Upon refusal of the trial court, the claim against Bintliff was tried fully and resolved against Bintliff by a jury. Bintliff appealed, and Chemetron filed a protective cross-appeal in which it complained that Bintliff should have been collaterally estopped from relitigating the issues against him in

---

**2.** It should be noted that at the time of the *Baggs* trial the statute of limitations had run against the Portnoy heirs in every conceivable jurisdiction in which an in personam judgment could be obtained against Cessna.

*Cosmos Bank.* In addressing the issue of whether the absence of a final judgment precluded "judicial finality", the Fifth Circuit stated:

> Thus, the finality requirement does not necessarily demand the ministerial act of executing a judgment. It does not elevate form over substance in that fashion—the accurate definition of "finality" in the offensive collateral estoppel context is "fully litigated."

*Id.* at 1191.

The plaintiff's reliance upon *Chemetron* is somewhat tenuous since the case is easily distinguishable from the cause presently before this Court. Neither Chemetron nor the cases cited therein contained an order granting a new trial or a final judgment. It was within this vacuum that the Circuit Court predicated its opinion. Conversely, the *Baggs* case contained an executed order granting new trial as well as a final judgment. The District Court's Order Granting New Trial based upon the trial judge's "reconsideration of the Defendant's Motion for New Trial previously filed . . .", and the Final Judgment specifically precluded any finding of liability. It is not the prerogative of this Court to circumvent the legal implications and to virtually ignore the reasoning and decision of Judge Pat Higginbotham, who was the trial judge in the *Baggs* case. For this reason, and for the reasons stated throughout this opinion concerning possible fairness to the defendant, this Court finds that the plaintiff's motion for partial summary judgment is not well taken and should be DENIED.

An Order shall be provided in accordance with this Opinion as set forth in the Local Rules.