**Sheryl A. GALIK, as Administratrix of the Estate of Bradley J. Galik, Deceased, Plaintiff,**

**v.**

**LOCKHEED SHIPBUILDING COMPANY, et al., Defendants.**

**The SINGER COMPANY, et al., Third–Party Plaintiffs,**

**v.**

**KENT METERS LIMITED, et al., and J.J. Henry Co., Inc., and ABC, DEF and GHI, being the corporate successor or**

---

successors to J.J. Henry Co., Inc., and The Aldi Corporation, Third–Party Defendants.

Civ. A. No. 87–1077–T.

United States District Court,
S.D. Alabama, S.D.

Dec. 12, 1989.

David Paul Bains, New Orleans, La., for plaintiff.

Norman E. Waldrop, Jr. and W. Boyd Reeves, Mobile, Ala., for Lockheed.

J. Hodge Alves, III and Brian P. McCarthy, Mobile, Ala., for Singer and Kearfott.

Joseph S. Johnston, Mobile, Ala., for Kent Meters, Ltd., Brown Boceri, George Kent Group, Reginald Christie and Dickinson Ltd.

George W. Finkbohner, Jr. and George W. Finkbohner, III, Mobile, Ala., for J.J. Henry & Co.

## ORDER

DANIEL HOLCOMBE THOMAS, Senior District Judge.

This Court having reviewed the pleadings, depositions, and affidavits, having studied the briefs and having duly considered defendants Motion for Summary Judgment, and plaintiff's opposition, and having heard and considered arguments thereon, hereby makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

#### FINDINGS OF FACT

1. Plaintiff, Sheryl A. Galik, is the Administratrix of the Estate of Bradley J. Galik, deceased.

2. Defendant, Lockheed Shipbuilding Company constructed the icebreaker POLAR SEA. The POLAR SEA was delivered to the United States Coast Guard in 1977.

3. Mrs. Galik sued Lockheed for the wrongful death of her husband. Lockheed filed a Motion for Summary Judgment asserting that under the "Government Contractor Defense" Lockheed was entitled to Summary Judgment as a matter of law. This Court held a hearing on November 14, 1989, which involved only the Motion for Summary Judgment.

4. On or about October 26, 1985, while serving aboard the United States Coast Guard icebreaker POLAR SEA as Marine

Science Technician, Bradley J. Galik received injuries from which he later died.

5. This accident occurred in the North Pacific Ocean when the POLAR SEA was returning to its home port in Seattle, Washington and encountered a violent storm. During the storm, Mr. Galik arrived on the bridge to have a weather message released. Mr. Galik was in the vicinity of the fathometer when a huge wave, totally unexpected, slammed into the POLAR SEA, causing a 50 degree plus roll of the vessel and causing Mr. Galik to be thrown down in the pilothouse fatally injuring him.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this matter pursuant to the Death on the High Seas Act ("DOHSA"), 46 U.S.C.App. § 761, *et seq.*, and 28 U.S.C. § 1333.

2. In this action, plaintiff admits that there is only one claim remaining: the sufficiency of the handrails adjacent to the fathometer in the POLAR SEA's pilot house. Plaintiff claims that a handrail should be attached to, or encircle, the fathometer, and attempted to create a fact issue on this point only.

3. Plaintiff concedes that there is no genuine issue of material fact as to her prior allegations concerning the sufficiency of the "clear view screens" and the pilot house deck covering. From the evidence of record, the Court agrees. Those claims are therefore not in issue and are due to be, and hereby are, dismissed as a matter of law. Accordingly, all claims involving the third-party plaintiff The Singer Company, and third-party defendants, Kent Meters Limited, et al.; J.J. Henry Co., Inc., and ABC, DEF and GHI, being the corporate successor or successors to J.J. Henry Co., Inc.; and the Aldi corporation, are dismissed with prejudice.

4. In *Boyle v. United Technologies Corporation*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). (Hereinafter referred to as *Boyle* ), the Supreme Court endorsed the use of the "government contractor defense", to shield government contractors such as Lockheed from liability for design defects in equipment produced for the United States government if the following conditions are met:

(a) The United States approved reasonably precise specifications for the equipment;

(b) The subject equipment conformed to those specifications; and

(c) The contractor or supplier warned the United States about dangers in the use of the equipment that were known to the contractor or supplier, but not to the United States.

*Boyle*, 487 U.S. ——, at ——, 108 S.Ct. at 2518, 101 L.Ed.2d at 458.

5. As concerning plaintiff's one remaining claim of insufficient handrails, the evidence is undisputed that the Coast Guard provided Lockheed with reasonably precise design plans and specifications for the overall design of the POLAR SEA, as well as its appurtenances and component parts. Not only did the Coast Guard approve the plans and specifications for the design of the POLAR SEA, but the Coast Guard itself formulated and drew up those plans and specifications only after a team of the Coast Guard's "icebreaker" experts constructed a "full scale mock-up" of the Polar Sea, before the construction contract was awarded to Lockheed. This Court concludes that the Coast Guard approved reasonably precise specifications for the PO-LAR SEA, and as such the first prong of the government contractor's defense is established as a matter of law.

6. The second prong of the government contractor defense is whether the military equipment in question was constructed by the contractor in conformity with the specifications developed or approved by the Government. *Boyle*, 487 U.S. at ——, 108 S.Ct. at 2518, 101 L.Ed.2d at 458.

7. The handrails installed by Lockheed in the pilot house of the POLAR SEA conformed in every way to the Coast Guard's contract specifications. Mr. Green repeatedly testified that, as head of the Coast Guard's resident inspection team, not only was it his specific duty to insure that the POLAR SEA was constructed in conformity with the Coast Guard's specifications,

but in fact the POLAR SEA conformed in every way to those specifications. The evidence from the Coast Guard is unequivocal that the handrails installed by Lockheed in the POLAR SEA's pilot house conformed with the Coast Guard's specifications, and were accepted as conforming.

8. There is no basis for Mr. Robinson's (plaintiff's expert) conclusion that the contract specifications require a handrail attached to, or encircling, the fathometer. Indeed, even one of the contract specifications relied on by plaintiff and Mr. Robinson confirm this. Specification 9240–1.2.3 provides that, "A safety grab rail shall extend around the consoles *as shown on the guidance plans.*" [Emphasis added.] Though plaintiff argues that this requires that a handrail surround, or be attached to, the fathometer, a review of the guidance plans and drawings reveals otherwise. The guidance plans clearly mark the location of the handrails to be installed in the pilot house, and conspicuously omit any handrail or grab rail surrounding or attached to the fathometer. Plaintiff cannot read this requirement in, where none exists, by substituting Mr. Robinson's subjective interpretations of the specifications for those of the Coast Guard and Lockheed, the contracting parties. Mr. Robinson's opinions as to the intent of the contract are impermissibly based on theoretical speculation and guesswork, and are not sufficient to create a "genuine" issue of material fact.

9. This Court is not persuaded by plaintiff's argument that the purported handrail deficiency is not a *design* defect, but is a *manufacturing* defect to which the government contractor defense does not apply. Plaintiff cannot avoid application of the government contractor defense merely by choosing a favorable label or terminology for her allegations.

10. This is not a case of an "aberrational" manufacturing defect as plaintiff argues. There was no hidden or latent manufacturing defect which the Coast Guard could not discover when inspecting the POLAR SEA. The Coast Guard knew how it wanted the POLAR SEA built and required that Lockheed build it that way. It de-

signed the POLAR SEA, and had a team of resident inspectors monitor it at all phases of production for conformity. The Coast Guard then ran trial sea tests for the POLAR SEA's conformity, and accepted and approved it as conforming. Moreover, plaintiff has produced no evidence that the decedent was using the fathometer at the time the giant wave smashed into the vessel. The most favorable evidence plaintiff could produce in this regard is that one or two witnesses said he had walked toward the fathometer the last time they saw him prior to the vessel being stuck. To say that a handrail on the fathometer would have altered the outcome when the ship suddenly took a series of 45 degree to 50 degree rolls, when there is no evidence Galik was even using the fathometer, is engaging in rank speculation.

11. Even after the accident, the Coast Guard reaffirmed its finding of conformity through the deposition of Mr. Green, its chief resident inspector. There is not now, nor has there ever been, any indication that the POLAR SEA was not constructed by Lockheed in conformity with the Coast Guard's detailed contract specifications. The contract drawings are clear. Plaintiff cannot use theoretical speculation to create a question of fact. As a matter of law, this Court holds that Lockheed has proved its conformity with the Coast Guard's contract specifications, and the second prong of *Boyle* has been established.

■ 12. The last prong of the government contractor defense requires that the military supplier or contractor warn the United States about the dangers in the use of the equipment that were known to the supplier or contractor, but not to the United States. *Boyle*, 487 U.S. at —, 108 S.Ct. at 2518, 101 L.Ed.2d at 458. However, a government contractor is under no duty to warn the government of any dangers associated with the use of a product of which the government is already aware. *See Zinck v. ITT Corp.*, 690 F.Supp. 1331, 1337 (S.D.N.Y.1988) (relying on *Boyle, supra*).

13. In this action, it is clear from the record " 'that the government knew as

much as, or more than, the defendant'" military contractor. *Zinck*, 690 F.Supp. at 1338 [quoting *"Agent Orange" Litigation*, 611 F.Supp. 1223, 1263 (D.N.Y.1985)]. Not only did the Coast Guard approve of the plans and specifications for the design of the POLAR SEA, but the Coast Guard itself, by and through its naval engineering division in Washington, D.C., designed the POLAR SEA and formulated its plans and specifications pursuant to a full-scale mock-up developed by a team of senior operations and engineering officials with years of experience as icebreaker captains. The Coast Guard's construction contract with Lockheed was that Lockheed would merely implement those plans and specifications, and construct the POLAR SEA accordingly. The Coast Guard knew how it wanted the POLAR SEA designed and built. It hired Lockheed to build it that way, i.e. according to the design it had conceived. The resident inspection staff's specific duty in their step by step inspection of the POLAR SEA at each phase of construction was to ensure that the POLAR SEA was being constructed in conformity with the Coast Guard's plans and specifications. This same inspection staff also participated in the several sea trials to ensure conformity prior to delivery by Lockheed and acceptance by the Coast Guard.

14. Lockheed built the POLAR SEA in conformity with the Coast Guard's plans and specifications, and the Coast Guard accepted it as conforming. Any design hazard associated with the use of the POLAR SEA was clearly known to the Coast Guard both at the time it designed the POLAR SEA, and at the time it accepted it as conforming. The third prong of the government contractor defense has been established as a matter of law.

15. Based on the foregoing, there is no question but that Lockheed has established each element of the government contractor defense as a matter of law. Lockheed, as a government contractor, is, therefore, entitled to the same immunity as the Coast Guard would have, had the Coast Guard itself constructed the POLAR SEA. *Boyle*, 487 U.S. at ——, 108 S.Ct. at 2517–18, 101 L.Ed.2d at 457–58. [Under the facts of the instant case, the Coast Guard would be immune from liability. *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950); *Stencel Aero Engineering Corporation v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977)].

## CONCLUSION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, there is no question of disputed material fact, and Lockheed is entitled to a judgment as a matter of law. Based upon the government contractor defense as adopted by the United States Supreme Court, Lockheed, as a matter of law, cannot be held liable for design decisions made by the Coast Guard, and is entitled to the same immunity afforded the Coast Guard had the Coast Guard constructed the POLAR SEA itself. Lockheed's motion for summary judgment is due to be, and hereby is, GRANTED.

In accordance with the above Findings of Fact and Conclusions of Law, a Judgment will be entered forthwith.

## JUDGMENT

By a document bearing the same date as the date of this Judgment, this Court granted the motion of defendant, Lockheed Shipbuilding Company, et al., for Summary Judgment. It is ORDERED, ADJUDGED, and DECREED that plaintiff, Sheryl A. Galik shall have and recover NOTHING from defendant Lockheed Shipbuilding Company et al., on all claims arising out of this litigation.

It is further ORDERED, ADJUDGED and DECREED that all claims involving third-party plaintiffs, The Singer Company et al., and third-party defendants, Kent Meters Limited et al.; J.J. Henry Co., Inc., and ABC, DEF, and GHI, being the successor or successors to J.J. Henry Co., Inc.; and the Aldi Corporation are dismissed with prejudice. Costs taxed to plaintiff.