A03A1492. GEORGIA DEPARTMENT OF DEFENSE v. JOHNSON.
(585 SE2d 907)

BLACKBURN, Presiding Judge.

In this interlocutory appeal concerning a personal injury action under the Georgia Tort Claims Act, OCGA § 50-21-20, the Georgia Department of Defense ("GDOD") appeals the trial court's denial of its motion for summary judgment, contending that the claims made by Mitchell B. Johnson, a federally employed civil technician and member of the Georgia National Guard at the time of the accident in

question, are barred by the doctrine of intra-military immunity. For the reasons set forth below, we agree and reverse.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*[1]

Viewed in this light, the record shows that Johnson, as a federally employed civil technician and a member of the Georgia National Guard, worked in the sheet metal shop at Dobbins Air Force Base, a federally run facility of the U. S. Air Force. While repairing a helicopter, Johnson was struck in the eye by a piece of a riveter he was using, resulting in his partial blindness. Johnson subsequently filed suit against the GDOD pursuant to the Georgia Tort Claims Act, OCGA § 50-21-20, contending that the State Adjutant General, the executive head of the GDOD, failed to properly train him to use the riveter or to provide appropriate supervision during its use.[2]

The GDOD filed a motion for summary judgment, and, on October 23, 2002, the trial court denied the motion, finding, without explanation, that genuine issues of material fact remained. The GDOD now appeals this ruling, contending that Johnson's claims are barred by the intra-military doctrine of *Feres v. United States.*[3]

> In *Feres v. United States*, the Supreme Court held that members of the armed services could not sue the government for injuries that "arise out of or are in the course of activity incident to service." [Id.] at 146, *quoted in United States v. Johnson.*[4] The Court grounded its ruling on the fact that relations between the government and its military personnel were "distinctively federal in character," exclusively governed by federal law, and that a comprehensive, even-handed government compensation scheme was available for service-connected injuries. [Id.] at 143-45. Later Supreme Court decisions emphasized the effect that private lawsuits

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).
[2] Johnson also sued the manufacturer of the riveter which caused his injury.
[3] *Feres v. United States*, 340 U. S. 135 (71 SC 153, 95 LE 152) (1950).
[4] *United States v. Johnson*, 481 U. S. 681 (107 SC 2063, 95 LE2d 648) (1987).

might have on military discipline. See, e.g., *United States v. Shearer*;[5] *Stencel Aero Eng'g Corp. v. United States*.[6]

*Stauber v. Cline*.[7]

The *Feres* doctrine has slowly been expanded to apply to two general types of cases: (1) those cases in which a plaintiff involved with the military sues the United States under the Federal Tort Claims Act for injuries suffered during activities related to military service and (2) those cases in which a plaintiff involved with the military sues other military actors for acts committed during the fulfillment of military duties and service. See *Jones v. Littlejohn*.[8] This case is of the latter variety.

In deciding this case, we must focus on the rationales underpinning the *Feres* decision and the need for intra-military immunity.

> *Feres* is grounded upon three broad rationales. First, the relationship between the government and the members of its armed forces is distinctively federal in character. Second, statutory veterans' benefits provide an upper limit of liability for the Government as to service-connected injuries. Third, suits by a service member against the government would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness. "The doctrine of intra-military immunity is an outgrowth of the third *Feres* rationale that decries the propriety of civilian courts delving into military matters and calling to bar military decisions and institutions." (Citations, punctuation and footnotes omitted.) *Durant v. Neneman*.[9] "Thus, our evolving jurisprudence has created a zone of protection for military actors, immunizing actions and decisions which involved military authority from scrutiny by civilian courts. . . ." Id. at 1353.

(Punctuation omitted.) *Littlejohn*, supra. Thus, the dispositive questions now before us are: (1) whether the State Adjutant General and Johnson were acting in the course of military service at the time of his injury and (2) whether the allegedly negligent acts of insufficient training and supervision arose from military rules and decisions. The answer to both questions is yes.

---

[5] *United States v. Shearer*, 473 U. S. 52, 57 (105 SC 3039, 87 LE2d 38) (1985).
[6] *Stencel Aero Engineering Corp. v. United States*, 431 U. S. 666, 671-672 (97 SC 2054, 52 LE2d 665) (1977).
[7] *Stauber v. Cline*, 837 F2d 395, 397-398 (I) (9th Cir. 1988).
[8] *Jones v. Littlejohn*, 222 Ga. App. 494, 496 (2) (474 SE2d 714) (1996).
[9] *Durant v. Neneman*, 884 F2d 1350, 1352 (10th Cir. 1989).

1. The State Adjutant General's relationship with federally employed civil technicians is set forth by state and federal statute and is clearly military in nature. OCGA § 38-2-151 (e) provides: "The adjutant general shall . . . perform such duties pertaining to his office as from time to time may be provided by the laws, rules, and regulations of the United States and such as may be designated by the Governor." In turn, 32 USC § 709 (d) states: "The Secretary . . . shall designate the [A]djutant[ ] [G]eneral . . . to employ and administer [civil] technicians." Certainly, the Adjutant General's command over civil technicians working on a federal military base is inherently military in nature.

The record is equally clear that Johnson was acting in a military capacity when he was injured. Johnson began working as a federally employed civil technician in 1987, and, in accordance with federal law, he was also a member of the Georgia National Guard. See 32 USC § 709 (b), (e). At the time of the accident, Johnson was repairing a helicopter owned by the federal government with a riveter that had been provided by the federal government. This evidence makes it clear that Johnson was performing a military function on military equipment at the time of his accident.

And, Johnson cannot avoid this conclusion simply by arguing that he was merely a civil technician.

> To be eligible for a National Guard [civil] technician position, however, one must be a National Guard military member. 32 U.S.C. § 709 (b). An employee's technician status must be terminated if the employee ceases to be a member of the National Guard. 32 U.S.C. § 709 (e) (1). The hybrid nature of the position renders it susceptible to the doctrine restricting review of military decision-making.

*Wood v. United States*.[10]

> The [National Guard Technicians Act of 1968 ("Technician Act")] makes technicians eligible for military employment benefits and, in so doing, seeks to improve national security by facilitating the recruitment of qualified individuals. See *American Fed'n of Gov't Employees v. FLRA*[11] (analyzing legislative history). The Act provides in relevant part that persons may be employed as technicians only "[u]nder regulations prescribed by the Secretary of the [relevant military branch]. . . ." 32 U.S.C. § 709 (a). Each such technician

---

[10] *Wood v. United States*, 968 F2d 738, 739 (8th Cir. 1992).
[11] *American Federation of Govt. Employees &c. v. Fed. Labor Relations Auth.*, 730 F2d 1534, 1542-1547 (D.C. Cir. 1984).

"shall, while so employed, be a member of the National Guard and hold the military grade specified by the Secretary concerned for that position." 32 U.S.C. § 709 (b). In substance, then, the Technician Act evidences Congress's intention that technicians, while retaining their positions as civil employees outside the competitive civil service, will serve simultaneously as employees of the appropriate military department, subject to its regulation.

*Wright v. Park.*[12]

With this background in mind, the logical conclusion is that National Guard service and, in turn, civil technician service should be considered military in nature.

> It is axiomatic that the National Guard is military in character. See H.R. Rep. No. 1823, 90th Cong.2d Sess., reprinted in 1968 USCCAN 3318, 3319 (recognizing the "military characteristics of the National Guard"). We think it follows that technicians are martial in character. Indeed, under the Technician Act's composite regime, technicians are considerably more than nominal members of the military establishment. In referring to the National Guard's mission, Congress termed it "essential" as a matter of "military policy" that "the strength and organization of the [National Guard] as an integral part of the first line defenses of the United States be maintained and assured at all times." 32 USC § 102. Because National Guard technicians serve as the Guard's support staff and are, in fact, those whose job it is to maintain and assure the Guard's strength and organization, they are indispensable to this nation's defense.

*Wright,* supra.

Thus, both the State Adjutant General and Johnson were acting in their military capacities at the time of the accident in question.

2. The second inquiry is whether the decisions regarding Johnson's supervision and training were also military in nature. They were.

As an initial matter, it does not appear that the State Adjutant General determined how Johnson should be trained. The record shows that all of Johnson's immediate supervisors, including his direct supervisor, the facility maintenance officer, and the facility commander, were all federal, not state, employees. In addition, training for civil technicians is provided by the federal government, not

---

[12] *Wright v. Park,* 5 F3d 586, 588 (II) (1st Cir. 1993).

the State. Evidence was presented that requests for training had to be made on U. S. Department of Defense forms, and the federal government, not the State Adjutant General, denied Johnson's requests.

Even if we assume, however, that the State Adjutant General was in charge of Johnson's training, it cannot be maintained that the decision on how to train a civil technician with regard to his military maintenance work is not, itself, military in nature. Such a decision involves an assessment of Johnson's military abilities and aptitude, and, as such, this Court will not second-guess the actions of the State Adjutant General, as "[c]ivilian courts may not sit in plenary review over intraservice military disputes." (Punctuation omitted.) *Wood*, supra at 739.

Accordingly, because all of the alleged actions and omissions on which Johnson bases his personal injury case are inherently intramilitary in nature, the trial court should have granted summary judgment to GDOD pursuant to the *Feres* doctrine.

*Judgment reversed. Ellington and Phipps, JJ., concur.*

DECIDED JULY 22, 2003 — 

*Thurbert E. Baker, Attorney General, Kathleen M. Pacious, Deputy Attorney General, Loretta L. Pinkston, Senior Assistant Attorney General, Jennifer L. Dalton, Assistant Attorney General*, for appellant.

*Sutherland, Asbill & Brennan, William D. Barwick, Alana R. Black, Deborah M. Danzig, Goldner, Sommers, Scrudder & Bass, Thomas E. McCarter*, for appellee.